STATE OF MISSOURI, Respondent, v. WILLIAM FAMBER, Appellant.—No. 41057.—214 S. W. (2d) 40.

Division Two, October 11, 1948.

*Morris A. Shenker* for appellant.

*J. E. Taylor,* Attorney General, and *Will F. Berry, Jr.,* Assistant Attorney General, for respondent.

[41] ELLISON, J.—The appellant was convicted of the felony of rape upon a female child ten years old, in violation of Sec. 4393, R. S. Mo. 1939, Mo., R. S. A. Under this statute force is unnecessary in the perpetration of the crime upon a child of that age. We shall refer hereafter to the child here involved only as "the prosecutrix." He was convicted by a jury and his punishment assessed at three years imprisonment in the penitentiary. On this appeal appellant complains of error in: (1) the admission of the testimony of the prosecutrix adduced to prove penetration, his contention being that it constituted a mere *conclusion* and not direct testimony; (2) the overruling of his motions in the nature of demurrers to the evidence at the close of the State's case and the whole case; (3) the failure to instruct on common assault; (4) the failure to give a requested instruction on circumstantial evidence, on the theory that there was no direct evidence of the rape; (5) the failure to instruct the jury on all the law of the case, as required by Sec. 4070(4); (6) and the giving of four instructions requested by the State—this on the theory that they erroneously singled out and commented upon immaterial evidence.

It being our duty under Sec. 4150 to search the record proper for error, whether it has been assigned or not, we shall state that we find no such error, and nothing calling for comment, except the fact that the jury's verdict merely assessed the punishment "at three years"—it did not say in the penitentiary. But that was not fatal. Sec. 4155; State v. Humphrey, 357 Mo. 824, 210 S. W. (2d) 1002, 1005(10).

In order that all doubt as to the facts may be eliminated, we shall quote them as they are stated in appellant's brief, omitting only the proper names of the prosecutrix and her family, and changing to "appellant" references made to him as "defendant". In a few instances we shall also refer to the testimony in the transcript brought up.

"The State's evidence began with the testimony of one Roscoe C. Haskell, a physician, who testified that on August 1, 1946, he examined the person of the prosecutrix in this case; that this examination revealed a torn hymen, a moderate amount of hemorrhage, and other secretions. He stated the age of his patient to be ten years and that the condition of her body was caused by some blunt instrument. On cross-examination this witness stated that the torn hymen could be caused by the penetration of any object and could even be self-inflicted, that the secretion he had referred to could have been the secretion of

the prosecutrix, that the only way of determining definitely whether a female had sexual intercourse was by the discovery of spermatozoa, and that no spermatozoa was found on the person of . . . (the prosecutrix).

"Another physician, Doctor Eugene P. Taylor, stated in his testimony that about the first part of August, 1946, the prosecutrix was brought to his office, that he examined the child, found that her vulva was swollen and bruised, and that this represented 'trauma' of the vulva. He stated that this was caused by some blunt force, but that the hymen was still intact, and that the condition was of recent origin.

"The next witness for the State was the mother of the prosecutrix, who stated that she had known the appellant for about three years prior to August 1, 1946, that on various times he had been in their home to fix the radio, that on August 1, 1946, the appellant came to the house to fix the radio, and that she left the house at that time to attend church, leaving at the house the prosecutrix and three other children. Further, that as she boarded a street car, she [42] noticed two of her children on the street, that she almost immediately descended from the street car, went back to her home, and upon entering, noticed the prosecutrix crying. She stated she took the child to the bathroom, and saw a discharge on her privates, and said the child had been 'attacked'. The Court denied the declaration of a mistrial upon this testimony, and the witness continued, stating she took the child to a doctor, told her husband of the alleged incident, and then went to the police. On cross-examination she stated that she had allowed the defendant in her home because she had confidence in him and had never heard anything bad about him.

"Further testimony in the State's behalf included that of the prosecutrix, who testified that she was eleven years of age, that she knew the appellant because he had fixed her mother's radio, that on the 1st of August, 1946, he came to the house, and after her mother had left the house, the appellant forced his attentions upon her and had intercourse with her. That thereafter her mother knocked on the door, and, after the appellant left, she told her mother what had occurred. She testified also that she went to Dr. Taylor's office, was examined by him, and also was sent to the Homer G. Phillips Hospital for examination. Upon her cross-examination by the counsel for the appellant she stated that she was told the name of the male sexual organ by the police, that she did not actually see the penetration, that she felt something along her privates, and that she had assumed this to be his sex organ for he had removed it from his trousers. She stated that he was lying so close to her at the time, that she could not actually see what transpired or what, if anything, accomplished a penetration, or whether there was any penetration whatever.

"There was then offered evidence by two police officers, Clarence G. Stanford and Fred Grimes. Officer Stanford testified that he had

participated in the arrest of William Famber by taking a report of the complaint from the prosecutrix' mother, that he had questioned the appellant after his arrest, that the appellant denied that he had raped or had intercourse with the prosecutrix, but said that he had inserted his finger in her vagina. The witness further denied having taken any sworn statement from the 'defendant at the police station. Officer Grimes testified merely that he had actually arrested the appellant, but had not participated at all in the questioning or further procedure at the police station or elsewhere.

"The appellant testified that he was 52 years of age, a widower, that he was a government employee, working as an instructor in aeronautical communications, and that he had a radio shop on the side. He stated that he had known the prosecutrix' mother four or five years, had known her before he knew her husband, or indeed that she was a married woman, and that he severed his relations with her upon discovering that she was married. He said also that he had given her money and gifts on several occasions, and, that she had subsequently asked him for additional financial assistance. Further, that on August 1, 1946, he went to their home, was. fixing the radio, and gave two of the other children money to get ice cream in order that they would not be in danger of the high voltage electricity with which he was working. He stated the prosecutrix' mother asked him for three dollars, and that he told her he would not give her any more money, and that it was not until three days later that he discovered of the present charge against him, that is, at the time of his arrest. He denied having any relations or intercourse with the prosecutrix, or having made any statement about using his finger, but said that he made a signed statement at the police station, and on cross-examination, the appellant asserted that he had had intercourse with the mother of the prosecutrix, on numerous occasions.

"The remainder of the appellant's case consisted of character witnesses . . ." There were seven of these witnesses, all of whom had lived in his general neighborhood, and had had contact with him. They gave it as their personal opinions that appellant "was an honest, reliable man, and of good character, and that he had a good reputation." In rebuttal, the prosecutrix' [43] mother denied having had intercourse with the appellant, or having received money from him.

The first four assignments of error all are directed mainly to the same contention, namely, that there was no evidence except the prosecutrix' testimonial *conclusions,* tending to show penetration of her body; and that at least there was enough substantial evidence to warrant a finding that the laceration and congestion of her vagina were produced by appellant's finger.

Turning back to our statement of facts taken from appellant's brief, it will be remembered that it categorically states the prosecutrix testified the appellant "had intercourse with her." This is substan-

tiated by the transcript brought up. It shows she testified that after the appellant got rid of two of the other children by giving them money to buy ice cream, he arranged his clothing and hers for the sexual act, and forced her to the couch where he had intercourse with her in a recumbent position. She said on direct examination that his penis penetrated "far enough to hurt."

She repeated that substantially on cross-examination, not saying it hurt her, but that she cried. However, appellant's counsel elicited from her the statement that while both parties were in that recumbent position she could not see what it was that entered her, but could only feel it. By answering "yes" to leading questions she said she "merely assumed" what it was, and that not knowing what it was, she couldn't tell whether it was inside her or not. Thence it is argued that her testimony stated only a conclusion, and was not *direct*. Counsel's brief endeavors to connect that with testimony adduced by the State and coming from an arresting officer. He said that at the police station the appellant denied he had had sexual intercourse with the prosecutrix, but admitted he penetrated her vagina with his finger while she was sitting in a chair with her dress skirt above her knees. This was specifically denied by the appellant and the prosecutrix was not asked about it, but her testimony in effect denied it, or at least omitted it in her chronological statement of the facts.

Without further reference to these noisome details, we think there is no merit in appellant's assignment that the testimony of the prosecutrix was not direct evidence but stated only "mere conclusions", and therefore was not competent legal evidence at all, leaving the State's case unsupported by evidence. Direct evidence is said to be "evidence which if believed proves the existence of the fact in issue without inference or presumption; while circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist."[1] And it is also said that direct evidence is that coming from an "eye witness;" or one who speaks directly "of his own knowledge" on the main or ultimate fact to be proven; or who "saw or heard" the factual matters concerning which he testifies.[2]

But it is not necessary that this direct knowledge be gained through the senses of sight and hearing alone. It may be obtained from any of the senses through which outside knowledge is acquired,[3] as the case

[1]22 C. J., p. 65, Sec. 8; 31 C. J. S., p. 505, Sec. 2; 20 Am. Jur., p. 35, Sec. 4, p. 258, Sec. 270.

[2]12 Words & Phrases (Perm. Ed.) "Direct Evidence", p. 469 et seq.; State v. Tate, 156 Mo. 119, 124, 130, 56 S. W. 1099, 1100(3), 1102; Rice v. Det. Fire & Mar. Ins. Co., 176 S. W. 1113, 1120(7); Stern v. Employers' Liab. Assur. Co., 249 S. W. 739, 741(3).

[3]State v. Hubbard, 351 Mo. 143, 148(1), 171 S. W. (2d) 701, 704(3); Rollins v. Business Mens' Accident Ass'n, 204 Mo. App. 679, 688-9(5), 220 S. W. 1022, 1026(5).

may be. In the instant case the prosecutrix' knowledge was gained partly through the sense of sight and partly through the sense of touch or pain. She testified on direct examination that the appellant committed the act of copulation, to the extent of causing pain. Under cross-examination she made the admission that she did not know whether she had been entered or whether the contact was only external. This was self-contradiction but not a judicial admission, and did not destroy [44] her testimony on direct examination. Hence it was for the jury to decide on all the evidence which version of the facts was true.

It follows also that appellant's fourth assignment—that the court erred in failing to instruct on circumstantial evidence—is not well founded. That was not obligatory since at least part of the evidence was direct. State v. Huff, 353 Mo. 791, 798(4), 184 S. W. (2d) 447, 451(6).

■ But further consideration must be given to appellant's third assignment of error, that the court should have instructed on common assault as a part of the law of the case, under Sec. 4070(4). As a matter of fact, appellant's brief further contends there should also have been an instruction on attempted rape. But since his motion for new trial (paragraph 7) made no mention of an instruction on attempted rape, but specified only common assault, we confine ourselves to that, in obedience to Sec. 4125.

Appellant relies on State v. Hoag, 232 Mo. 308, 316(4), 134 S. W. 509, 510(3), where it was held that if a similar assault with the hand there charged was committed with intent to rape it would be a felony under (now) Sec. 4409, but in the absence of such intent (of which there was substantial evidence) it would be only common assault under (now) Sec. 4411, which is only a misdemeanor and punishable as such by virtue of (now) Sec. 4845, under the original charge. And the cause was reversed and remanded for failure to instruct on common assault as a part of the law of the case under (now) Sec. 4070(4). That section provides the court "must" instruct on such fundamental issues "whether requested or not." It was therefore unnecessary to request the instruction, or to except to the failure to give it. All that was necessary was that the point be *explicitly* raised in the motion for new trial,[4] as required by Sec. 4125, and that was done here.

As against appellant's contention the State invokes Sec. 4836 and State v. King, 342 Mo. 975, 988(10), 119 S. W. (2d) 277, 284(3), which applied it. That statute provides there shall be no conviction of "an assault with an intent to commit a crime, or any other attempt to commit any offense, when it shall appear that the crime intended

---

[4]State v. Burrell, 298 Mo. 672, 678-9(1), 252 S. W. 709, 711(1); State v. Graves, 352 Mo. 1102; 1119(16), 182 S. W. (2d) 46, 57(25); State v. Parker, 355 Mo. 916, 922(6), 199 S. W. (2d) 338, 340(5).

or the offense attempted was perpetrated by such person at the time of such assault or in pursuance of such attempt.'' As will be seen, the statute deals only with intended or attempted offenses. In the King case the charge, as here, was actual rape of a girl under sixteen years old in violation of Sec. 4393. The appellant complained of the trial court's failure to instruct on attempted rape and common assault. As to attempted rape, the decision said an instruction thereon would have been improper under Sec. 4836, supra, because there was substantial evidence that the rape was accomplished. But that ruling has no application here since appellant did not preserve the point in his motion for new trial. As to common assault, the opinion held the evidence ''showed that if *any* crime was committed . . . it was statutory rape (and) an instruction on common assault would have been improper.'' In other words, the issue was simply rape vel non, and there was no evidence to support an instruction on common assault.[5]

The State further argues that no instruction on common assault could have been given because that misdemeanor is not embraced within the crime of actual rape, but only of *attempted* rape. However, Sec. 4845, supra, provides that ''upon an indictment . . . for a felonious assault, the defendant may be convicted of a less offense.'' And appellant cites State v. Mason, 322 Mo. 194, 201(3), 14 S. W. (2d) 611, 614(4), which was a prosecution for actual rape of a girl twelve years old, where it was expressly held that ''an instruction on common assault involved the law of the case and should have been given, if the facts justified it.''

[45] So the important question on this assignment is whether there was any substantial evidence of common assault. The State proved by the police officer that appellant said at the police station the day following the alleged assault, that he put his finger in the prosecutrix' vagina, but did nothing more. The appellant in his testimony denied both the fact and the admission. Under the Hoag case, supra, if the appellant did do that without an intent to commit rape it was only common assault. Appellant's testimony, if believed, acquits him of both the act and a felonious intent. But the officer's testimony, if believed, would or might convict him only of common assault. Does that make an issue for the jury? It was held by the court en banc that it did, in State v. Wright, 352 Mo. 66, 74(2), 175 S. W. (2d) 866, 871 et seq. (4-10). In that case the State proved a prior statement by the defendant claiming self-defense, which he repudiated at the trial. But it was held he was entitled to an instruction on self-defense nevertheless. The principle is the same here.

The State, in introducing the appellant's alleged statement to the police must have believed it had some bearing on the case. Probably

---

[5]State v. Miller, 263 Mo. 326, 335(3), 172 S. W. 385, 388(4); Ann. Cas. 1916 A, 1099; State v. Hurlbut (Mo., Div. 2), 285 S. W. 469, 473(5).

it was thought the appellant's admission of the finger assault would induce a jury inference that if he went that far he would and did go further and ravish the prosecutrix as she said; and that the jury would disbelieve his testimony to the contrary. But the State could not limit the jury to that single conclusion. They might not have credited all he said, but on the contrary they might have believed he made the initial finger assault without going beyond it; that he repented, or feared the children who had gone for the ice cream would return; etc. It should also be remembered in this connection that one of appellant's medical witnesses testified the prosecutrix' hymen was not ruptured. We do not say the weight of the evidence favors the appellant. But as said in State v. Weinhardt, 253 Mo. 629, 636(1), 161 S. W. 1151, 1153(2): "However improbable the testimony of the defendant may have been the court could not refuse to submit it to the jury." We therefore hold that under the ruling in the Wright case the question here was for the jury, and that appellant was entitled to the benefit of such parts of his alleged admission introduced by the State as were in his favor from either a legal or factual standpoint.

Having reached that conclusion, we need not discuss the remaining assignments on the instructions. For the failure to give an instruction on common assault the judgment is reversed and the cause remanded. All concur.