**STATE of Missouri, Plaintiff-Respondent,**

v.

**Richard D. WAKEFIELD, Defendant-Appellant.**

**No. 13247.**

Missouri Court of Appeals, Southern District, Division Three.

Nov. 20, 1984.

Motion for Rehearing or Transfer Denied Dec. 7, 1984.

Application to Transfer Denied Jan. 15, 1985.

Charles M. Shaw, Shaw, Howlett & Schwartz, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Frank A. Rubin, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Judge.

This case involves trafficking in stolen motor vehicles and parts thereof, a form of criminal activity sometimes called the operation of a "chop shop." By four-count information filed in the Circuit Court of Reynolds County, defendant Richard D. Wakefield was charged with: I) receiving a stolen 1978 Chevrolet Monza in violation of § 570.080, RSMo 1978;[1] II) removing or defacing identifying numbers on the Monza in violation of § 301.400, now repealed; III) receiving a stolen 1977 Chevrolet pickup truck in violation of § 570.080, and IV) forging a vehicle identification number on the Chevrolet pickup in violation of § 570.-090.1(3). As permitted by Rule 24.07, all four counts were tried jointly. The defendant was acquitted on Counts I and III but found guilty of violating former § 301.400 and forgery, as charged in Counts II and IV of the information. Defendant's punishment for altering or defacing a vehicle identification number in violation of § 301.-400 was assessed at a fine of $100; his punishment for forgery was assessed at a fine of $5,000.

Defendant appeals, maintaining: 1) that there is no substantial evidence to support either of the two judgments of conviction; 2) that the trial court erred in permitting the State to list the names of three previously undisclosed material witnesses, as required by Rule 23.01(f), shortly before the trial commenced; 3) that the trial court erroneously permitted the State to amend the information on the day of trial and erroneously denied a continuance requested on that account; 4) that the State's closing argument constituted an improper and prejudicial comment on the defendant's failure to testify, and 5) that the trial court erred in giving and reading a preliminary instruction to the jury.

▆ The dispositive issues on appeal are whether or not the evidence supports the judgments of conviction. Defendant's counsel has contented himself with the argument that the evidence of defendant's guilt is wholly circumstantial, and as such, does not meet the standard required in such cases, specifically, that " 'the facts and circumstances ... be consistent with each other and with the hypothesis of defendant's guilt, and ... be inconsistent with [the defendant's] innocence and exclude every reasonable hypothesis of his innocence.' " *State v. Franco*, 544 S.W.2d 533, 534 (Mo. banc 1976), *cert. denied* 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977). The State has taken the argument as presented, but we do not propose to discuss the difference between "circumstantial" and "direct" evidence at length. See *State v. Famber*, 358 Mo. 288, 293, 214 S.W.2d 40, 43[3] (1948). It is sufficient in this respect to note that even when the evidence of defendant's guilt is wholly circumstantial, evidence tending to support the verdict must be taken as true, contrary evidence must be disregarded and every reasonable inference tending to support the

1. References to statutes and rules are to RSMo 1978 and Missouri Rules of Court (13th ed. 1982), except where otherwise specifically noted.

verdict must be indulged. *State v. Cobb*, 444 S.W.2d 408, 412[3] (Mo. banc 1969). Moreover, and contrary to the implied premise of defendant's argument, the weight of the evidence is not a matter for review by this court. *State v. Brown*, 660 S.W.2d 694, 698[9] (Mo. banc 1983).

Unfortunately, an extended recitation of the background facts is necessary to an understanding of the appeal. These prosecutions were the result of an investigation of a series of automobile thefts and traffic in stolen vehicles and parts thereof in Dent, Reynolds and Carter counties by the Missouri State Highway Patrol (SHP or the Patrol). This investigation led the Patrol to the defendant as a suspect. Defendant Wakefield owned and operated an automobile salvage yard and repair shop north of Ellington on Highway 21 in Reynolds County.

The State laid a predicate for the two convictions with which we are concerned by calling Sergeant John Cummings, a member of the Patrol who is a vehicle identification expert. As material here, Sergeant Cummings explained the identification of particular vehicles by locating vehicle identification numbers and other "identifiers" placed on vehicles by a manufacturer. Among other things, Sergeant Cummings testified that every vehicle, particularly more recent models, has a complete VIN which is mounted on the dashboard. This VIN is visible through the front window of the vehicle. The VIN is stamped onto a thin malleable metal strip which is about 4½ inches long and ¾ inch wide. This strip, with the VIN stamped on it, is affixed to the dashboard—or in some other place—by two rosette head rivets. "Rosette head" rivets have slight indentations around the head of the rivet, giving it a roseate appearance.

Sergeant Cummings also testified that the number of letters and digits in a VIN vary in vehicles manufactured before 1981. Since the 1981 model production year, all automobile manufacturers have used a 17-character VIN. Before 1981, GM used 13 letters and digits. Ford's VIN was varia-ble, depending upon the function of the vehicle. The Chrysler Corporation used a 13-character VIN.

Each letter or digit in the VIN serves a particular function. For example, one letter designates the assembly plant, one or two digits indicate the production year, and the last six numbers are called sequential production numbers. The sequential production number is thus a derivative of the complete VIN and is unique. Other identification numbers are also stamped onto the chassis or motor of the automobile or truck. There is a "confidential" identification number, located somewhere on the automobile so it is not visible; there are also identifying numbers on the engine and on the transmission. The location of these numbers depends on the make and model of the vehicle, but the information needed to locate those and other "identifiers" is provided to peace officers and other theft investigators by the National Automobile Theft Bureau.

We consider first the conviction on Count II, which charged the defendant with altering or defacing the manufacturer's identification number on a 1978 Chevrolet Monza automobile. The State's theory on this count was that the defendant had taken the VIN from the body of a 1980 Chevrolet Monza automobile and had affixed it to a 1978 model which defendant owned and sold to one Billy White.

The State had the following evidence bearing on this count: Joseph Bowen, a resident of Bunker, Missouri, owned a 1978 Monza automobile, which "disappeared" from a parking lot in Salem on October 25, 1980. Mr. Bowen's automobile was insured. He surrendered the title to his insurance carrier. The title summary from the files of the Missouri Department of Revenue, received in evidence as State's Exhibit 25, make it clear that the defendant never had any title to this automobile. The VIN on this vehicle ended in the six digits 237144.

Billy A. White purchased a 1980 Monza automobile, or what purported to be such, from the defendant "about the middle of

January" 1981. The Patrol impounded this vehicle after inspection because, although the "public" VIN indicated Mr. White's vehicle was a 1980 model, the "confidential" identification number indicated the automobile was a 1978 model Monza. This "confidential" VIN was traced to Mr. Bowen's vehicle by the Patrol. Examining the motor number and the transmission number revealed that they were derivatives of the public VIN of a 1980 model Monza.

The State had further evidence that when SHP searched the defendant's salvage yard, the body of a 1980 model Chevrolet Monza was found. The title record of this vehicle, before us as State's Exhibit 26, reveals that the defendant had a title to this vehicle. When the defendant's premises were searched, the confidential VIN on this body corresponded to the public VIN found on the 1978 Monza, as shown by Exhibit 20A, and State's Exhibit 18, which is the public VIN strip taken from the red 1978 automobile.

To sum up, there is evidence in the record which permits the inference that at some time the defendant, or one of his employees at his direction, mounted the body of the red 1978 Monza onto the frame and transmission of a 1980 model which the defendant had acquired as salvage. The public VIN strip was removed from the salvage automobile and was affixed by homemade rosette rivets to the body of the 1978 automobile; thereafter the reconstituted automobile was sold as a 1980 model vehicle. Once again, the question is whether this evidence, taken as true, warranted a conviction under the provisions of former § 301.400.

Section 301.400, before it was repealed and in substance reenacted as a Code offense in 1981, read in material part as follows:

"Any person who *removes*, covers, alters or defaces, *or causes to be* destroyed, *removed*, covered, altered or defaced, the manufacturer's number, the motor number or other distinguishing number on any motor vehicle ... the property of another, for any reason, shall be deemed guilty of a felony and on conviction thereof shall be punished by imprisonment in the state penitentiary for a term not exceeding five years or by confinement in the county jail for a term not exceeding one year, or by a fine not exceeding one hundred dollars or by both such fine and imprisonment."

It will readily be seen that this section created what was formerly called a "mixed" or "graded" felony. See, e.g., *State v. Thomas*, 343 S.W.2d 56, 57[2] (Mo. 1961); *State v. Underwood*, 254 Mo. 469, 162 S.W. 184 (1914). The statute, almost in its present form, was originally enacted as § 25 of the Motor Vehicle Act of 1921, Laws of Mo. 1921, First Extra Session, p. 76. The statute was intended to denounce and deter traffic in stolen motor vehicles and parts thereof, inasmuch as it is a matter of common knowledge that, in order to prevent and hinder the identification, tracing, and receiving of a stolen motor vehicle, the manufacturer's serial number or other distinguishing or identifying number, originally placed on the vehicle by the manufacturer, frequently is destroyed, removed, altered or defaced by the thief or thieves. *State v. Friedman*, 412 S.W.2d 171, 174–75[2–4] (Mo.1967); *Star Square Auto Supply Co. v. Gerk*, 325 Mo. 968, 979–81, 30 S.W.2d 447, 452–53 (1930).

The crime denounced has two elements: 1) removing, covering, altering or defacing the manufacturer's identification number or other distinguishing number on any motor vehicle, or causing the number to be destroyed; 2) the motor vehicle must be the "property of another."

■ Proof of the second element is found in the records of the Department of Revenue. The Director of that department is required by statute, § 301.350 among others, to keep records indicating the registry of vehicles "under a distinctive number assigned to such motor vehicle ...." Section 301.350.1. Parts of those records—sufficient to indicate the ownership of the two Chevrolets involved—were received in evidence. We have no doubt that the vehicle registration records of the Department

of Revenue were admissible to show ownership of the vehicles involved. See, generally, 30 Am.Jur.2d, Evidence § 991, p. 121 (1967). These records indicate that the defendant had no species of ownership in the 1978 Monza automobile, and it was unnecessary for the purposes of this prosecution to prove the absolute ownership of that vehicle. Cf. *Dowdell v. State*, 429 N.E.2d 1, 3[2] (Ind.App.1981).

■■■■ The evidence is sufficient to support the judgment of conviction on Count II. We decline to repeat the tiresome prolixity of the record by attempting to reconstruct the inductive reasoning process by which the jury could have reached the result it did. Substantive due process requires this court to ascertain whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 320, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573–74 (1979). We find the evidence, whether characterized as partially direct and partially circumstantial, or otherwise, sufficient for that purpose. We are not required to scrutinize the reasoning process actually used by the fact finder. *Id.*, 443 U.S. at 320, n. 13; 99 S.Ct. at 2789, n. 13, 61 L.Ed.2d at 573–74, n. 13.

The evidence adduced by the State in support of the allegations of Count IV—which charged the defendant with forgery—was a good deal more direct, but here a threshold observation is appropriate.

While neither party has briefed or even suggested the question, it is necessary to consider whether the language of § 570.-090 is broad enough to include the forgery of an automobile manufacturer's VIN. On principle, there seems to be no reason why manufacturer's identification numbers should not be the subject of forgery. Discussing the question, Professor Perkins wrote:

"Here, as is very common in the law, the word 'writing' is used in a broad sense. It is not limited to handwriting but includes also typewriting, printing, engrav-

ing and so forth. With this explanation it may be said that the subject of forgery is any writing which has apparent legal significance...."

Perkins, Criminal Law, p. 342.

Section 570.090.1(3) reads as follows:

"1. A person commits the crime of forgery if, with the purpose to defraud, he ...

(3) *Makes or alters anything other than a writing*, so that it purports to have a genuineness, antiquity, rarity, *ownership* or authorship which it does not possess; ...." (Our emphasis.)

This Section did not come from the Model Penal Code; the Comment appended to the statute recites that it is essentially similar to former § 561.011(1), (2), (3) and (4), RSMo 1969.

The Model Penal Code, on the other hand, defines "writing" to include "printing or any other method of recording information, money, coins, tokens, stamps, seals, credit cards, badges, trade-marks, and other symbols of value, right, privilege, or identification." Model Penal Code § 224.1(1). The enumeration is intentionally extensive, so as to avoid possible narrow construction by application of the principle of ejusdem generis. Part II, Model Penal Code, Vol. 2, pp. 286–87 (1980). However, the definition was specifically meant to include the alteration of manufacturer's identification numbers. Id. at p. 307.

■■■ We conclude that § 570.090.1(3) is broad enough to cover vehicle identification numbers. The phrase "anything other than a writing" is as broadly inclusive as "printing or any other method of identification" and, again, it is common knowledge that changing or obliterating the identification numbers on a motor vehicle is a common expedient to conceal its ownership. *Donaldson v. United States*, 82 F.2d 680, 681[2] (7th Cir.1936).

The State's submitted theory on Count IV of the information was that defendant altered the manufacturer's identification number on a stolen 1977 Chevrolet pickup

so as to make the body appear to be the property of another.

To support this theory, the State had first the evidence of James B. Erhardt, who was an electrician. Mr. Erhardt was shown by records of the Department of Revenue to be the owner of a 1977 GMC pickup, public VIN TKL 147S 511 200, subject to a lien held by the Reynolds County Savings Bank of Ellington: Inferably, this pickup was tan. The pickup was damaged, and Mr. Erhardt took the vehicle to the defendant for repair. When defendant returned the pickup after repairing it, the vehicle was black.

Mr. Erhardt's vehicle was impounded by the Patrol about April 28, 1981. While it was impounded, Sergeant Cummings inspected it. Sergeant Cummings' inspection disclosed that the VIN plate, which on this particular vehicle is attached to the left door post, was attached by simulated, or homemade, rosette rivets. Cummings also located a "confidential" identification number on the vehicle and an engine number.

The "confidential" VIN on this pickup is located on the top of the right frame rail. There are actually two such numbers, one directly under the cab, the other about 30 inches behind it. Inspection of these numbers disclosed they were not authentic. Photographs of one of these identification numbers are before us as Exhibits 22A and 22B. As shown by Exhibit 22B, the confidential number is TKL 511 200. Although this number is a "derivative" of the complete VIN, it is not proper as a confidential VIN, for the second letter in the confidential VIN should be a year designator. The year designator should have been "7" rather than "K." Comparison of the full VIN with the number found on the frame reveals that the year designator "S" appears immediately before the six-digit production serial number 511 200. The significance of the letter "K" is that years of production were not designated by letters until manufacturing year 1980. Therefore, if the confidential VIN had been authentic, the vehicle would have been a 1989 model.

The size and spacing of the letters and numbers of the confidential VIN indicated the number had not been stamped on the frame of the pickup at an assembly plant; a factory installed number would have differently sized and spaced letters and digits. Sergeant Cummings also found a fictitious engine number and the transmission number had been completely ground away. At the location of the confidential VIN's and the engine number, Sergeant Cummings found signs of heating and buffing or grinding, indicating that the original numbers had been obliterated before the fictitious numbers were stamped on the vehicle.

Sergeant Cummings also examined the "logo" on the Erhardt vehicle. The "logo" on a pickup is a highly polished casting attached to the left front fender near the top. This logo indicates the model of the pickup. The logo affixed to the Erhardt vehicle read "Sierra Grande 15," which is a model of GMC pickup. Cummings removed the logo and polished the paint underneath. A "ghost" logo appeared, which read "Silver Auto 10." This logo designates a particular model Chevrolet truck. Sergeant Cummings also found a business card printed for Toyota Town, 8045 East R. L. Barton Freeway, Dallas, Texas. There were directions written on the reverse side of the card. The card was found underneath the seat in the cab of the pickup.

On May 5, 1981, defendant's business premises were searched. Sergeant Cummings took part in the search, and he located a "service parts identification sticker" for a 1977 Chevrolet pickup truck. This "sticker" is usually placed inside the glove compartment of a new motor vehicle by the manufacturer so replacement parts may be properly identified. The sticker also identifies the vehicle by its complete VIN. Upon finding this item, Sergeant Cummings contacted the headquarters of Troop "G" to see if the vehicle identified by the sticker had been reported stolen. Cummings was put in touch with Steven Holly, a resident of St. Louis County. Other items found during the search and a telephone conversation with Mr. Holly led SHP to believe

Mr. Erhardt's vehicle—or part of it—was really Mr. Holly's pickup.

Mr. Holly was called as a witness for the State. He was shown a picture of the Erhardt pickup, and was asked to recount the points of similarity, if any, between the Erhardt pickup and his vehicle, which had been stolen. When he saw the Erhardt pickup, Holly was able to note many similarities between the two. Holly recalled, and testified: 1) that his vehicle had cigarette burns "in the middle of the truck on the floor," as did the suspect vehicle; 2) there were fog lamps on the Erhardt pickup, and "the wiring and everything was put on by myself and it was the same wiring that I'd done"; 3) the switch for the fog lamps "was a regular toggle switch mounted under the dash that I'd put in myself."; 4) there was a "tear in the seat" identical to a defect in Mr. Holly's seat covering, and 5) Holly's speedometer had been broken and the speedometer on the Erhardt pickup "was still broken ... at the approximate same miles." Other points of similarity between the pickup which had belonged to Mr. Holly and the Erhardt vehicle could be noted, but, as Mr. Holly testified "[b]asically everything was the same." Mr. Holly also identified the Toyota Town business card as being a card he had acquired in Dallas. Some of Mr. Holly's personal effects were found when defendant's premises were searched, and he identified these items as being his.

Holly testified he never had any of the manufacturer's identification numbers changed, and that the identifying logo on his pickup truck had read "Silver Auto 10." He had obtained possession of the truck by filing suit in replevin. The truck was awarded to him. Such was the nature and tenor of the State's evidence bearing on the forgery count, Count IV of the information.

■ The elements of that order of forgery denounced by § 570.090.1(3) are these: 1) That defendant, with a purpose to defraud, 2) make or alter 3) anything other than a writing, 4) so that it purports to have a genuineness, antiquity, rarity, ownership or authorship which it does not pos-

sess. The New Missouri Criminal Code: A Manual for Court Related Personnel § 15.7 (1978). An intent to defraud may be inferred from the act of changing or obliterating the identification numbers on a motor vehicle. As we have already observed, it is held to be common knowledge that the manufacturer's numbers on an automobile are a most ready means for its identification, and changing or obliterating the numbers is a common expedient for concealing its ownership. *Donaldson v. United States*, 82 F.2d at 681. Otherwise put, the intent to defraud which is a necessary element of this case is not a specific intent to defraud some particular person; the State was only required to demonstrate a general intent to defraud and the act of forgery itself, if shown, imported such an intent. *State v. Arenz*, 340 Mo. 160, 164, 100 S.W.2d 264, 266 (1936); *State v. Eaton*, 166 Mo. 575, 580–81, 66 S.W. 539, 540 (1902). If the defendant's criminal agency could be inferred, so could his intent to defraud.

■ Could the defendant's criminal agency be inferred here? In our view, it could. Erhardt testified that he had his pickup repaired several times by the defendant, and on one occasion the repair was extensive. When the vehicle was inspected by the Patrol, every manufacturer's identification number on the vehicle had been altered. Such alterations required knowledge of the significance and location of the identification numbers and considerable skill as a mechanic. Inferably, the defendant had such knowledge and skill—he had operated a salvage yard and repair shop for many years. Mr. Holly identified the vehicle, or part of it, as being his. He testified without objection that the vehicle had been stolen. Holly's keys fit the truck claimed by Erhardt, and some of Mr. Holly's personal effects were found in a partially buried plastic bag on defendant's premises. The evidence is sufficient to establish the defendant's criminal agency.

■ The only other evidentiary question is whether the vehicle identification numbers were altered so as to give Erhardt's pickup a purported ownership it did not

have. There was very direct evidence on this point. The public VIN is part of a Missouri Certificate of Title to a motor vehicle; that number—for Erhardt's vehicle—was TKL 147S 511 200. This is shown by State's Exhibit 29, received in evidence at the trial. Removing the public VIN plate which had originally been riveted to the door post of the GMC pickup and affixing it to the door post of another similar vehicle was undoubtedly calculated to give Erhardt's pickup an appearance of ownership it did not have. The evidence was sufficient to support the judgment of conviction on Count IV of the information.

This disposes of defendant's claim that the evidence is not sufficient to support the judgments of conviction. As noted, several other assignments of error have been briefed. The first of these assignments is that the trial court erred to defendant's prejudice in permitting the State to present the names of three witnesses, previously undisclosed, on the day of trial and in permitting the State to amend Count II of the information so as to aver that the crime therein charged was committed during "a period from September 24, 1980 to January 15, 1981." The defendant prayed a continuance because of the late endorsement of witnesses and the amendment of the information upon the day of trial. The continuance was denied. Defendant now argues that late disclosure of the names of three witnesses and amendment of the information deprived him of a "constitutionally fair trial."

 The point concerning late disclosure of the names of witnesses need not detain us long. The three witnesses—Rouse, Neumann and Phillips—did not testify to any facts tending to prove defendant's guilt or innocence of the crimes charged in Counts II and IV of the information. Their testimony was relevant only to the charges of receiving stolen property, alleged in Counts I and III of the four-count information. *State v. Ford,* 639 S.W.2d 573, 575 (Mo.1982), is wholly inapposite here. In *Ford,* our Supreme Court held that although error in a criminal case is presumed to be prejudicial, the presumption of error may be overcome by the facts and circumstances of the particular case. Id. at 575. Certainly, if Robert Ford had been acquitted, there would have been no error. There is another rule of law which controls the disposition of this point, specifically, that only prejudicial error requires reversal of a judgment of conviction. *State v. Kurtz,* 564 S.W.2d 856, 861 (Mo. banc 1978). Late disclosure of the names of witnesses Rouse, Neumann and Phillips, assuming it was error, did not prejudice the defendant.

Another aspect of this same point is that the court erred in permitting the State to amend Count II of the information so as to charge that the offense was committed "during the period from September 24, 1980 to January 15, 1981." The information originally charged the crime was committed "on or about January 15, 1981."

 Amendments to criminal informations are governed and controlled by Rule 23.08, which reads in pertinent part as follows:

"Any information may be amended ... at any time before verdict or finding *if* no additional or different offense is charged and *if* a defendant's substantial rights are not thereby prejudiced. No such amendment or substitution shall cause delay of a trial unless the court finds that a defendant needs further time to prepare his defense by reason of such amendment or substitution." (Our emphasis.)

This rule superseded § 545.300, *State v. King,* 380 S.W.2d 370, 375 (Mo.1964), *cert. denied* 379 U.S. 979, 85 S.Ct. 681, 13 L.Ed.2d 569 (1965), but in effect it states the case law as it stood before the rule was adopted. There is no pretense that the amendment of Count II charged any new or different offense. We have the opinion that the amendment made here was in the nature of a conforming amendment. The State's hypothesis was that the specific acts constituted parts of a continuing series of interrelated transactions, and that at some time during the 4-month period

between September 24, 1980, and January 15, 1981, defendant committed the act charged in Count II. When the date of the commission of an offense is not essential to the crime charged, amendment of the date on which the crime was committed lies within the trial court's discretion, in the absence of an affirmative showing of prejudice. *State v. Snyder,* 502 S.W.2d 339, 342 (Mo.1973); *State v. Montgomery,* 590 S.W.2d 697, 698[2] (Mo.App.1979); *State v. Brookshire,* 329 S.W.2d 252, 255[1] (Mo. App.1959). Upon trial, counsel for defendant claimed surprise and asked for a continuance. We are unable to perceive any reason for continuing the trial of all four counts of the information because one count thereof had been amended. Counsel did not ask for a severance and continuance of Count II; the claim of surprise is not factually supported and in fact defendant presented no evidence pertaining to any of the dates averred. The assignment of error is without merit. *State v. Montgomery,* 590 S.W.2d at 698.

Defendant also maintains that in closing argument, the State commented prejudicially upon the defendant's failure to testify. The prosecutor's remark was:

"Also remember before I sit down and let Mr. Shaw argue, there is no contradiction to any of the evidence I've talked to you about—

MR. SHAW: —Objection, your Honor.

THE COURT: The jury will—

MR. SHAW: —No, I object to that statement.

THE COURT: For what reason?"

Then, out of the hearing of the jury:

"MR. SHAW: The defendant will object to the statement there is no contradiction of the evidence as it's an improper comment upon the defendant's failure to produce evidence or to testify.

THE COURT: Overruled."

■ The principle which defendant seeks to invoke applies only when the State refers directly and certainly to the defendant's failure to testify. Merely stating that evidence is uncontradicted or that a defendant has failed to offer evidence is not such a certain and direct reference. *State v. Robinson,* 641 S.W.2d 423, 426 (Mo. banc 1982); *State v. Inscore,* 592 S.W.2d 809, 812–13 (Mo. banc 1980); *State v. Hutchinson,* 458 S.W.2d 553, 555–56 (Mo. banc 1970). Further MAI–CR.2d 3.76 was read to the jury. That instruction reads:

"Under the law, a defendant has the right not to testify. No presumption of guilt may be raised and no inference of any kind may be drawn from the fact that the defendant did not testify."

This assignment of error has no merit.

■ The defendant's final assignment of error is likewise devoid of substance. Before the trial began, the court stated in the presence of the jury, according to defendant's counsel, that:

"The plaintiff's case is normally put in first. The defendant then puts in his defense, and after that a rebuttal is allowed to the plaintiff."

This admonition to the jury smacks of inadvertence on the part of the trial court. However, the record does show affirmatively that MAI–CR.2d 1.06, MAI–CR.2d 2.01 and MAI–CR.2d 2.02 were faithfully read to the jury. The jury was properly advised and cannot have been misled. There is no merit in this assignment.

We find no error in any respect briefed and submitted to this court. Accordingly, the judgments of conviction are affirmed.

GREENE, C.J., CROW, P.J., MAUS and PREWITT, JJ.