Lester NOKES, Appellant,

Norma Robinson, Tony Gutierrez, Jackson Gutierrez and Eustolio Gutierrez, Appellants,

v.

HMS HOST USA, LLC, HMS Host Corporation, Host International, Inc., LJA Enterprises, Inc., Respondents.

Nos. WD 73055, WD 73056.

Missouri Court of Appeals, Western District.

Sept. 13, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 1, 2011.

Application for Transfer Denied Dec. 20, 2011.

Randall L. Rhodes, Bradley D. Kuhlman, and Chad C. Lucas, Kansas City, MO, for appellants.

Paul L. Wickens and Robert Harold Houske, Kansas City, MO, for respondents.

Special Panel: JAMES M. SMART, JR., P.J., JAMES E. WELSH, J., and ZEL M. FISCHER, Sp.J.

ZEL M. FISCHER, Special Judge.

The families of Sandra Nokes and Diana Gutierrez ("Nokes") appeal the Jackson County circuit court's entry of summary judgment in favor of HMS Host USA, LLC, HMS Host Corporation, Host International, Inc., and LJA Enterprises, Inc. ("Host defendants") in a consolidated action for dram shop liability under § 537.053, RSMo Supp.2006.[1] The issue on appeal is whether Nokes presents sufficient evidence to create a genuine issue of material fact as to whether the Host defendants knowingly served alcohol to a visibly intoxicated person. The judgments against HMS Host USA, LLC and HMS Host Corporation are affirmed. The judgments against Host International, Inc. and LJA Enterprises, Inc. are reversed.

### Facts

Viewed in the light most favorable to Nokes, the record reflects the following facts.[2] Jeffrey Chiarelli was in an automobile collision while driving through Texas at approximately 9:42 PM on January 18, 2007. The collision killed Sandra Nokes and Diana Gutierrez, passengers in the other vehicle, and injured Eustolio Gutierrez, the other driver. The victims of the collision, including the families of Sandra Nokes and Diana Gutierrez, filed a petition alleging dram shop liability based on § 537.053 against the owners of the Bud Stadium Club ("Stadium Club"), a restaurant in the Kansas City International Airport, which served intoxicating liquor to Chiarelli earlier that day.

Host International, Inc., and LJA Enterprises, Inc., owned the Stadium Club and held its liquor license through a joint venture on January 18, 2007. HMS Host Corporation owns Host International, Inc., and HMS Host USA, LLC, a company formed on April 17, 2007, three months after the day of the accident.

The accident occurred while Chiarelli was returning home from the Dallas–Fort Worth airport after flying from Kansas City, Missouri. Before boarding his flight in Kansas City, Chiarelli visited the Stadium Club, where he consumed four "double" Maker's Mark® cocktails with a splash of coke. A drink receipt indicates that the Stadium Club served these drinks between approximately 4:34 PM and 6:22 PM. Chiarelli had nothing to drink prior to arriving at the Stadium Club but recalls drinking one Crown Royal® cocktail while on the airplane between approximately 7:30 PM and 7:45 PM. No one at the restaurant or in the airport recalls seeing Chiarelli.

After the collision, the responding police officer noted that Chiarelli had slurred speech and the smell of alcohol on his breath. The police report indicates that Chiarelli's speech was "slurred," his eyes were "red," "bloodshot," and "watered," and the odor of alcohol on his person was

---

1. All statutory citations refer to RSMo Supp. 2006 unless otherwise specified.

2. When considering an appeal from a grant of summary judgment, the Court reviews "the record in the light most favorable to the party against whom the judgment was entered." *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The party against whom the judgment was entered is accorded the benefit of all reasonable inferences from the record, and all facts are reviewed in the light most favorable to that party. *Robson v. Diem*, 317 S.W.3d 706, 708 n. 1, 712 (Mo.App.2010).

"strong." Chiarelli failed the field sobriety test of the responding officer, who believed that Chiarelli was "intoxicated and not capable of safely operating a motor vehicle." Chiarelli's blood alcohol concentration level was .169% according to the results of blood tests conducted at 11:20 PM, approximately four and one half hours after he left the Stadium Club.

Nokes presents deposition testimony of toxicologist Dr. Gary Wimbish. According to Dr. Wimbish, each of the "doubles" that Chiarelli drank contained 3.5 ounces of Maker's Mark® whiskey, rather than the standard two ounces. He opined that Chiarelli's blood alcohol concentration level would have been approximately .10% when he ordered his second cocktail, .15% when he ordered his third, and between .175% and .18% when he ordered his fourth. Dr. Wimbish testified that Chiarelli would have begun showing significantly uncoordinated physical action or significant physical dysfunction before ordering his second drink, including a noticeable change in facial appearance, change in demeanor and attitude, release of inhibitions, loss of judgment, and a "loss of the fine sense of intellect." Wimbish further testified, "Chiarelli would have demonstrated obvious signs of the effects of alcohol where it was clear to anyone—any trained observer that he would have the observable signs of the effects of alcohol. . . ."

Handmark, Inc., Chiarelli's employer and previous defendant in this suit, had presented the deposition testimony of Dr. Klaassen, who agreed that if Chiarelli drank four cocktails at the Stadium Club, each containing 3.5 ounces of Maker's Mark®, he would have had significant physical dysfunction and motor discoordi-

nation. Dr. Klaassen also stated that, given those circumstances, anyone paying attention would have seen that Chiarelli was drunk at the Stadium Club. Even Dr. Pape, as a Ph.D in entomology and HMS Host's retained expert, testified that most social drinkers are visibly intoxicated at a blood alcohol concentration level of .151%.

Nokes brought an action claiming that Host defendants are liable for damages under Missouri dram shop statute, § 537.053. The circuit court entered summary judgment in favor of all of the Host defendants and against Nokes.

## Standard of Review

Summary judgment should be granted only if the movant establishes that there is no genuine issue as to the material facts and that the movant is entitled to a judgment as a matter of law. Rule 74.04(c)(6); *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Facts asserted by the moving party are accepted "as true unless contradicted by the non-moving party's response to the summary judgment motion." *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 453 (Mo. banc 2011) (quoting *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376). When considering appeals from summary judgment, the court reviews the record in the light most favorable to the party against whom the judgment was entered. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376.[3] "Only genuine disputes as to material facts preclude summary judgment." *Goerlitz*, 333 S.W.3d at 453. "A material fact . . . is one from which the right of judgment flows." *Id.*

---

3. The court is aware of the substantial evidence supporting the Host defendants' position. However, because this court is constrained by the standard of review on summary judgment motion, the contrary evidence is not considered at this stage of the proceedings.

■ Rule 74.04(e) requires that affidavits or deposition testimony supporting or opposing summary judgment be admissible in evidence.[4] A movant may show entitlement to summary judgment by demonstrating that the non-movant has not and cannot produce sufficient evidence to allow the trier of fact to find the existence of any one of the elements of the non-movant's cause of action. *Id.* "If, as a matter of law, the circuit court's judgment is sustainable on any theory, it should be affirmed on appeal." *Id.* However, at summary judgment, the court does not test the weight of evidence, only whether there is a genuine issue of material fact. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 378.

## Analysis

Missouri's dram shop statute, § 537.053, provides the exclusive remedy for third persons injured as a result of the sale of liquor to an intoxicated driver. *Auto Owners Mut. Ins. Co. v. Sugar Creek Mem. Post No. 3976*, 123 S.W.3d 183, 191 (Mo. App.2003). All parties to this case and *amici curiae*[5] proffer to this court policy arguments and competing rules of statutory construction, which may support a ruling in their favor. "[But the] [c]ourt's primary rule of statutory interpretation is to give effect to legislative intent reflected in the plain language of the statute." *Parktown Imports, Inc. v. Audi of America, Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009). This court will make a "genuine effort to determine what the legislature intended" from the actual words of a statute and will not engage in "judicial side-stepping of the legislature's clear intent." *Id.* at 672–673. "Other rules of statutory interpretation, which are diverse and sometimes conflict, are merely aides that allow this [c]ourt to ascertain the legislature's intended result." *Id.* "[T]his [c]ourt need not apply the canons of interpretation or seek aids to interpret a statute when a statute is easily read and understood." *Turner v. Sch. Dist. of Clayton*, 318 S.W.3d 660, 669 (Mo. banc 2010); see *also State v. Rowe*, 63 S.W.3d 647, 649 (Mo. banc 2002). The current dram shop statute is clear on its face, and the legislature's intent is clearly reflected by its plain language.[6]

4. The circuit court did not rule on the motion to strike filed by the Host defendants; therefore, this court makes no determination concerning the merits of that motion or future admissibility of that evidence or testimony.

5. Missouri Association of Trial Attorneys filed an *amicus curiae* brief in support of Nokes, and Missouri Restaurant Association filed an *amicus curiae* brief in support of Host defendants.

6. 1. Since the repeal of the Missouri Dram Shop Act in 1934 (Laws of 1933–34, extra session, page 77), it has been and continues to be the policy of this state to follow the common law of England, as declared in section 1.010, to prohibit dram shop liability and to follow the common law rule that furnishing alcoholic beverages is not the proximate cause of injuries inflicted by intoxicated persons.

2. Notwithstanding subsection 1 of this section, a cause of action may be brought by or on behalf of any person who has suffered personal injury or death against any person licensed to sell intoxicating liquor by the drink for consumption on the premises when it is proven by clear and convincing evidence that the seller knew or should have known that intoxicating liquor was served to a person under the age of twenty-one years or knowingly served intoxicating liquor to a visibly intoxicated person.

3. For purposes of this section, a person is "**visibly intoxicated**" when inebriated to such an extent that the impairment is shown by significantly uncoordinated physical action or significant physical dysfunction. A person's blood alcohol content does not constitute prima facie evidence to establish that a person is visibly intoxicated within the meaning of this section, but may be admissible as relevant evidence of the person's intoxication.

The current dram shop statute has three elements. The claim must be brought (1) "by or on behalf of any person who has suffered personal injury or death ..." against a (2) "person licensed to sell intoxicating liquor by the drink for consumption on the premises ..." and demonstrated by clear and convincing evidence that the person (3) "knowingly served intoxicating liquor to a visibly intoxicated person ..." Section 537.053(2).[7]

The issues raised in this appeal do not concern the first element of the dram shop statute regarding whether the appellants are the proper parties to bring the claims presented.

A dram shop claimant must show that the claim is brought against a "person licensed to sell intoxicating liquor by the drink for consumption on the premises." Section 537.053(2). The record reflects that the named defendants who are licensed to sell intoxicating liquor by the drink for consumption on the premises are Host International, Inc., and LJA Enterprises, Inc. Therefore, the circuit court's grant of summary judgment in favor of HMS Host USA, LLC and HMS Host Corporation are affirmed.

The dram shop statute's requirement of clear and convincing evidence is the standard of proof for weighing the evidence at trial, and its determination is a function of the fact finder; the requirement does not modify this court's standard of review regarding summary judgment. *See ITT Commercial Fin. Corp.*, 854 S.W.2d at 376. The determination of clear and convincing evidence "requires the [fact finder] to weigh the evidence and assess the credibility of the witnesses." *Smith v. Square One Realty Co.*, 92 S.W.3d 315, 317 (Mo.App.2002); *Sauvain v. Acceptance Indem. Ins. Co.*, 339 S.W.3d 555, 569 (Mo. App.2011) ("[I]n determining a summary judgment motion, the judge ... is not to decide what the facts are or to make credibility determinations, but simply to determine whether there is a triable issue of fact.") (quoting *Care & Treatment of Schottel v. State*, 159 S.W.3d 836, 844 (Mo. banc 2005)).[8] Therefore, this court does

---

4. Nothing in this section shall be interpreted to provide a right of recovery to a person who suffers injury or death proximately caused by the person's voluntary intoxication unless the person is under the age of twenty-one years. No person over the age of twenty-one years or their dependents, personal representative, and heirs may assert a claim for damages for personal injury or death against a seller of intoxicating liquor by the drink for consumption on the premises arising out of the person's voluntary intoxication.

5. In an action brought pursuant to subsection 2 of this section alleging the sale of intoxicating liquor by the drink for consumption on the premises to a person under the age of twenty-one years, proof that the seller or the seller's agent or employee demanded and was shown a driver's license or official state or federal personal identification card, appearing to be genuine and showing that the minor was at least twenty-one years of age, shall be relevant in determining the relative fault of the seller or seller's agent or employee in the action.

6. No employer may discharge his or her employee for refusing service to a visibly intoxicated person.

7. The prior version of the statute did not require proof of knowledge, nor did it require the higher burden of proof at trial of clear and convincing evidence. The prior statute merely required that the person be served drinks when "obviously intoxicated." Section 537.053, RSMo 2000 (amended in 2002).

8. Clear and convincing evidence "tilts the scales in the affirmative when weighed against the evidence in opposition ... [and] clearly convinces the fact finder of the truth of the proposition to be proved." *Smith v. Square One Realty Co.*, 92 S.W.3d 315, 316 (Mo.App.2002) (quoting *Hoffman v. Quality Chrysler Plymouth Sales, Inc.*, 706 S.W.2d 576, 580 (Mo.App.1986)) (internal quotation marks omitted). *See also* MAI 3.01, 3.04, and 3.07 (5th Ed.).

not determine whether the evidence Nokes has presented is clear and convincing, only whether the evidence is sufficient to demonstrate a genuine issue of material fact regarding all elements of the cause of action. *See Theerman v. Frontenac Bank*, 308 S.W.3d 756, 762–63 (Mo.App.2010).

Nokes presented evidence in response to the motion for summary judgment that the Host defendants knowingly "served intoxicating liquor to a visibly intoxicated person." Section 537.053(2). It included direct evidence, circumstantial evidence, and expert testimony.[9]

"Visibly intoxicated" is expressly defined as "inebriated to such an extent that the impairment is shown by significantly uncoordinated physical action or significant physical dysfunction." § 537.053(3). "A

person's blood alcohol content does not constitute prima facie evidence to establish that a person is visibly intoxicated within the meaning of this section, but may be admissible as relevant evidence of the person's intoxication." *Id.*

Because the record shows that no one observed Chiarelli's impairment at the Stadium Club, the Host defendants argue that the evidence on the record is insufficient to demonstrate that Chiarelli was visibly intoxicated. However, the statute requires only that impairment be "shown," not that someone must observe a visibly intoxicated person.[10] The current dram shop statutes do not prescribe the type of evidence necessary to prove the elements of the cause of action. In addition to direct evidence, circumstantial evidence and expert testi-

---

9. Direct evidence is "evidence, [that], if believed, proves the existence of the fact in issue without inference or presumption." *State v. Famber*, 358 Mo. 288, 214 S.W.2d 40, 43 (1948); *State v. Harris*, 807 S.W.2d 528, 529 (Mo.App.1991). Circumstantial evidence is "evidence that does not directly prove the fact in issue but gives rise to a logical inference that the fact exists." *State v. Hall*, 201 S.W.3d 599, 605 n. 6 (Mo.App.2006) (quoting *State v. Mayfield*, 83 S.W.3d 103, 107 (Mo. App.2002)). The standard for admissibility of expert testimony in civil cases is set out in § 490.065. *State Bd. of Registration for the Healing Arts v. McDonagh*, 123 S.W.3d 146, 153 (Mo. banc 2003). Section 490.065 provides:

1. In any civil action, if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.
2. Testimony by such an expert witness in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.
3. The facts or data in a particular case upon which an expert bases an opinion or

inference may be those perceived by or made known to him at or before the hearing and must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable.
4. If a reasonable foundation is laid, an expert may testify in terms of opinion or inference and give the reasons therefor without the use of hypothetical questions, unless the court believes the use of a hypothetical question will make the expert's opinion more understandable or of greater assistance to the jury due to the particular facts of the case.

10. During oral argument, counsel for the Host defendants took the position that if the only living witness to a defendant in a cause of action pursuant to § 537.053 knowingly serving intoxicating liquor to a visibly intoxicated person exercised his or her Fifth Amendment rights against self incrimination and refused to testify, then the plaintiff could not successfully bring a cause of action based on § 537.053. The legislature did not bar recovery against an establishment that knowingly served alcoholic beverages to a visibly intoxicated person based simply on the fact no one saw him or her. The statute expressly states what must be shown but not how it must be shown.

mony may be permitted if relevant and admissible.

Blood alcohol content test results demonstrated that Chiarelli's blood alcohol concentration level was .169 at 11:20 PM. According to the expert opinion testimony presented for consideration to the circuit court, this creates an inference that Chiarelli was intoxicated while at the Stadium Club. Chiarelli's level of blood alcohol concentration is relevant to whether he was visibly intoxicated, but the results of the blood tests standing alone are insufficient to demonstrate that a genuine dispute exists concerning whether Chiarelli was visibly intoxicated. Section 537.053(3). However, Nokes presents additional direct evidence and expert testimony in addition to evidence of Chiarelli's blood alcohol concentration level.

The responding officer observed Chiarelli's impairment: after the collision, Chiarelli's speech was "slurred," his eyes were "red," "bloodshot," and "watered," and the odor of alcohol on his person was "strong." Chiarelli failed a field sobriety test, and the officer believed that Chiarelli was so intoxicated that he could not safely operate a motor vehicle. Clearly Chiarelli showed signs of impairment after the accident, which creates an inference of intoxication at an earlier time. Additional direct evidence included a drink receipt showing that Chiarelli consumed four "double" Maker's Mark® cocktails with a splash of coke within a matter of two hours. How much and how fast Chiarelli drank these alcoholic beverages along with other factors in the record would be relevant to determining whether he was visibly intoxicated at the Stadium Club.

According to the expert testimony presented for consideration in ruling on the motion for summary judgment, evidence of a person's blood alcohol concentration level is reasonably relied upon by toxicologists to determine a person's blood alcohol concentration level at an earlier point in time, and a person's blood alcohol concentration level is part of the foundation considered by the toxicologists who testified regarding Chiarelli's alleged outward physical characteristics.[11]

Dr. Wimbish, Nokes' retained witness, believed that Chiarelli's blood alcohol concentration level would have been between .175% and .18% before he ordered his fourth drink at the Stadium Club. After approximating Chiarelli's probable blood alcohol concentration level at the Stadium Club, Dr. Wimbish presented further testimony concerning Chiarelli's physical manifestations resulting from that level of intoxication. He stated that Chiarelli would have begun showing significantly uncoordinated physical action or significant physical dysfunction before ordering even his second drink at the Stadium Club, as well as his third and fourth. Dr. Wimbish commented that Chiarelli, who characterized himself as a social drinker, would have shown a release of inhibitions, loss of judgment and "the fine sense of intellect," and noticeable changes in facial appearance, demeanor, and attitude, which would constitute outward manifestations of impairment. Even Dr. Pape, HMS Host's retained witness, conceded that most social drinkers are visibly intoxicated at a blood alcohol concentration level of .151%.

Host defendants contend the lack of direct evidence that HMS Host acted "knowingly" entitles them to summary judgment. "Circumstantial evidence is viewed no differently from direct evidence

11. As referenced earlier because the circuit court did not rule on the motion to strike filed by the Host defendants this court makes no determination concerning the admissibility of retrograde extrapolation or any other contested testimony.

when determining whether there [is] a genuine issue as to any material fact so as to preclude summary judgment." *Schroeder v. Duenke*, 265 S.W.3d 843, 848 (Mo. App.2008) (quoting *Daniels v. Senior Care, Inc.*, 21 S.W.3d 133, 139 (Mo.App.2000)). Because a person's knowledge is an "elusive" and subjective fact, circumstantial evidence "is usually the only means available of proving knowledge . . .," and a claimant may rely on circumstantial evidence to prove knowledge. *Schroeder*, 265 S.W.3d at 848; *Don Shrum, Inc. v. Valley Mineral Prods. Corp.*, 563 S.W.2d 67, 69 (Mo. banc 1978) (quoting *Herrman v. Daffin*, 302 S.W.2d 313, 316 (Mo.App.1957)) (internal quotation marks omitted). "[S]ummary judgment is rarely appropriate [when] the facts must in nearly every case be proven by circumstantial evidence." *Schroeder*, 265 S.W.3d at 848 (quoting *Smith v. Aquila, Inc.*, 229 S.W.3d 106, 124 (Mo.App.2007)).

Nokes's evidence regarding Chiarelli's level of intoxication, taken together with the drink receipts, the police report, and the expert testimony that such a level of intoxication would produce outward manifestations of intoxication was sufficient to demonstrate the existence of a genuine issue of material fact as to whether the Host defendants knowingly "served intoxicating liquor to a visibly intoxicated person." Section 537.053.

### Conclusion

In light of the foregoing, the judgment entered in favor of HMS Host USA, LLC and HMS Host Corporation is affirmed. The judgment entered in favor of Host International, Inc., and LJA Enterprises, Inc., is reversed. This case is remanded.

All concur.