STATE of Missouri, Respondent,

v.

Wallace R. BOBBITT, Appellant.

No. 55030.

Supreme Court of Missouri,
En Banc.

April 12, 1971.

John C. Danforth, Atty. Gen., Frank P. Cihlar, Asst. Atty. Gen., Jefferson City, for respondent.

Frank W. May, Desloge, for appellant.

HIGGINS, Commissioner.

Appeal from denial, after evidentiary hearing, of motion under Criminal Rule 27.26, V.A.M.R., to vacate and set aside judgment of conviction entered on plea of guilty to robbery, first degree, with a dangerous and deadly weapon.

The events which gave rise to movant's plea of guilty occurred on the night of January 18, 1969. Movant and his friends, Joseph Marion Petruzza and Frances Helen Harris, were traveling through Madison County, Missouri, and stopped at L. C. Tidwell's Mill Creek Derby filling station which was attended that night by Douglas Carpenter. Movant, armed with .25-caliber and 6.35-caliber handguns and a blackjack, struck Mr. Carpenter three times with the blackjack, causing him to fall, pointed one of the guns at him, and robbed the station of $173.00. He left the scene in his automobile and was arrested soon after the robbery by the Madison County Sheriff and a highway patrolman. He made a statement in question-and-answer form to the Prosecuting Attorney of Madison County January 20, 1969. On January 22, 1969, movant appeared in the Circuit Court of Madison County with his previously-appointed attorney, Robert A. McIlrath. He pleaded guilty to robbery, first degree, with a dangerous and deadly weapon, and the court sentenced him to twenty-five years' imprisonment.

His motion for relief under Rule 27.26, supra, was filed April 2, 1969, and an evidentiary hearing on the motion was accorded August 7, 1969, after which the court made findings of fact and conclusions of law and denied any relief to movant.

On this appeal from the denial of his motion, appellant contends first that the court erred in denying him relief on his motion "for the reason that defendant was not granted an opportunity to be advised by counsel." In making this contention he concedes (and the record demonstrates conclusively) that he did have Mr. Robert A. McIlrath as counsel. He proceeds, however, to assert that he conferred with him for such a short time that his right to counsel was violated, "and, therefore, his only remedy is a new trial."

On this issue, movant testified that Mr. McIlrath was appointed as counsel for him when he appeared in court. He spoke to him in court "two or three minutes. * * There was no chance for any defense or actually any advice. The man told me 'I don't know what to tell you.'" They talked in a room off the courtroom. He did not believe that Mr. McIlrath told him the penalties, "Although I was informed several times by the prosecutin' attorney and the sheriff that it did carry the death penalty. * * * I don't think they made a promise. * * * I understood I was charged with armed robbery in the 1st degree by means of a dangerous and deadly weapon. And, * * * I could receive the death penalty for it." He admitted commission of the robbery and giving the question-and-answer confession after first receiving warnings relative to his constitutional rights including the right to have counsel then appointed.

The remainder and other aspects of the relation between appellant and his lawyer were elicited by the state through the testimony of Mr. McIlrath and the record of proceedings made at the plea of guilty. Mr. McIlrath, a practicing lawyer since 1935, with extensive experience in criminal cases, recalled his appointment as counsel for appellant. "He was charged with armed robbery with a dangerous and dead-

ly weapon." He talked to appellant in the room off the courtroom and advised him that he would try the case to a jury if he wanted to go to trial. "I came out and asked the prosecuting attorney if there was any recommendations." He learned there were none. "I went back again and I said I would try the Judge. So, I went in and talked to the Judge and he told me that he wouldn't, that it would be rough, and I told him that. And I told him that I would try it before a Jury. * * * I advised him to try it before a Jury but it was his case and he could do as he pleased. But I'd try it before a Jury if I was doin' it." His recommendation was to try the case to a jury. "I told him the limits of the thing and that I would try it before a Jury." He talked with appellant five or ten minutes before he conferred with the prosecuting attorney, then he talked again with appellant, then with the judge, and then again with appellant, at which time he recommended jury trial. He talked at some length with appellant, sufficient to learn of his education, background in Memphis, Tennessee, and whether he had prior convictions. The record of proceedings at the plea of guilty shows that appellant was twenty-nine years of age, had conferred with Mr. McIlrath, and discussed the range of punishment for robbery, first degree, running from five years to death. He understood the range of punishment prior to arraignment on the charge. He pleaded guilty to the charge and acknowledged discussion with his attorney with respect to determining how to plead and whether to plead guilty. One response to questions relative discussion with his attorney was, "Yes, I'm guilty. I was drunk and I robbed the service station." Further record showed forthright and cogent answers by appellant to questions relating to his home, background, education, work, prior good record, and that he had not been promised anything by way of recommendation.

Appellant theorizes that counsel should have examined the information and confes-

sion but there is no record to show that counsel did not do so. There is no suggestion that the information was defective, and the record does not show the confession to have been present in any form at the proceedings surrounding the plea of guilty, at which time appellant confessed his guilt in open court.

Under these circumstances, it certainly cannot be said that appellant did not have an opportunity to consult with counsel. Absent showing that more time with counsel was requested, desired, or necessary, it may not be said on this record that appellant's time with counsel, even though to some it may appear short, deprived appellant of an opportunity to be advised by counsel. Childers v. State, Mo., 436 S.W.2d 674, 676[1]. Neither can it be said that the finding to the effect that appellant had effective assistance of counsel is clearly erroneous. Crosswhite v. State, Mo., 426 S.W.2d 67, 70[1]. To grant the remedy of a new trial to a jury would be to award that which allegedly ineffective counsel recommended from the outset and which was obviously rejected by an accused whose understanding of his predicament is reflected in the described proceedings.

In his Point II, appellant charges "that under the total facts (totality of circumstances) of the case, defendant's rights to a fair trial have been violated." He predicates this assertion on Criminal Rule 29.05, V.A.M.R., providing that "Every person arrested and held in custody * * * shall be permitted to consult with counsel or other persons in his behalf, and, * * * to use a telephone if one be available."

Appellant's attempted support for this assertion is self-defeating conjecture when it is argued that "It is subject to speculation what the course of Defendant's action might have been had he been allowed the right to use the telephone and to see Counsel as argued in (Point) I. * * It is quite possible that the Defendant, upon being advised by someone with his

concern in mind, might have taken a different action." In contrast to such conjecture, it has already been demonstrated that appellant had counsel, together with opportunity to consult and to be advised; that with the assistance of counsel, alternatives were considered, and that appellant chose not to take the advice of counsel which would have resulted in the jury trial then rejected by appellant and which he now seeks. In addition, the record shows that interrogation occurred only after appellant was fully advised of his rights and that he had sufficient intelligence and experience to understand his rights. There was no evidence to show that appellant was held incommunicado in any respect. In short there was no evidence of any improper treatment of appellant while in custody, and the totality of circumstances refutes appellant's contention rather than to show any denial of his right to trial. State v. Beasley, Mo., 404 S.W.2d 689, 692–693[5]; State v. Smith, Mo., 415 S.W.2d 748, 751[5].

In Point III appellant charges that the court failed in the duty under Criminal Rule 25.04, V.A.M.R., to determine "that the plea is made voluntarily with understanding of the nature of the charge." See Drew v. State, Mo., 436 S.W.2d 727; Mooney v. State, Mo., 433 S.W.2d 542; State v. Williams, Mo., 361 S.W.2d 772.

The first and second arguments to support this contention are concerned with the time question and the totality of circumstances, assertions previously answered under Points I and II. By way of the third argument to support this point, appellant asserts there is no record of "an interview between Mr. McIlrath in private with psychiatric aid," and of a motion to withdraw the plea of guilty. The obvious answer to the first part of this argument is that the record is also barren of any attempt to demonstrate need of, or request for, "psychiatric aid." Cf. Cornell v. Superior Court, 52 Cal.2d 99, 338 P.2d 447. The answer to the second portion of the argument is that from this record it could only be said that neither counsel nor appellant apprehended cause to seek to withdraw this plea of guilty. In this latter connection, it is probably fair to observe that appellant's punishment was assessed at twenty-five years' imprisonment for a serious admitted crime in circumstances in which appellant, himself, recognized that the penalty could have been life imprisonment or death.

Running throughout appellant's brief are assertions that he was on drugs and alcohol during all the proceedings following his arrest, and that because of such conditions he was unable to comprehend his situation, thus rendering his plea involuntary.

Appellant's evidence on this issue came solely from his own testimony at the hearing on his motion. He stated he was "drunk and drugged" when he talked with the prosecuting attorney and the sheriff. "I'd taken phenobarbital and mebaral when I was outside under normal circumstances. We'd been on the road for three days. I'd been takin' a large quantity of benzadrine, beside my regular medicine, and I'd consumed quite a bit of alcohol." He had been getting "three phenobarbs and three dilantin a day" by prescription while in prison for this crime. He was not under psychiatric care at the time of his arrest.

In contrast, Sheriff N. F. Whitener testified that he did not smell alcohol on appellant's breath when he apprehended him. He did not have red eyes or a "runny" nose, and at no time while in custody following his arrest did appellant make any request relative withdrawal symptoms or need of dope, medication, or drugs. Appellant had no dope, pills, or drugs on his person when arrested, and the sheriff never observed any withdrawal symptoms in the period following appellant's arrest on January 18, 1969, and entry of his plea of guilty on January 22, 1969. The confession given January 20, 1969, shows appellant to have made cogent, intelligent answers to all questions, and that he corrected the

sheriff's version of the offense. He traced his activities over several days preceding the offense in detail and he did not mention any drug addiction or use by habit or prescription. He did not mention any mental condition and limited cause of his offense to being drunk. The transcript of proceedings at the plea of guilty is void of any mention of mental problems or drug use.

■ This recital shows the evidence on appellant's assertion of being drunk and drugged to be in sharp conflict. The court resolved such conflict against appellant and, on this record, it may not be said that such resolution was clearly erroneous. Crosswhite v. State, supra.

Judgment affirmed.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the Court.

All concur except SEILER, P. J., who dissents in separate dissenting opinion filed.

SEILER, Presiding Judge (dissenting).

I would reverse and remand, and sustain defendant's motion, because things were done in too much of a hurry for the assistance which counsel could have given to be effective. The best proof of this is what actually happened: appointed counsel, who had practiced in the circuit 35 years, evidently believed the jury would be more lenient with defendant than the judge, because he recommended a jury trial. Counsel also told defendant that the judge said it would be rough. Defendant, however, did not follow counsel's advice. Why? There is no rational explanation to be drawn from the facts stated in the majority opinion, other than failure on the part of defendant to comprehend the situation because of the rush. There is no indication counsel took or had time to explain to defendant why counsel was of the opinion the jury would be better for him, although counsel was in far the superior position to evaluate defendant's chances. Defendant was entitled to an expression from his experienced and jury-wise counsel as to what punishment, in his best judgment, the jury would assess and counsel's reasons for thinking so.[1] For example, this is what appointed counsel did with his client in Wilson v. State, Mo., 459 S.W.2d 298, where we rejected a claim of ineffective assistance of counsel. In the case before us, defendant was simply choosing in the dark, and had to do so in a hurry.

Additionally, this case is a good illustration of how the practice of appointing counsel and taking a guilty plea, all in a short time, actually saves no time at all. Short periods of time such as we have here—from 5 to 10 minutes or perhaps 15 to 30 minutes at the most, between appointment and guilty plea—are the most fertile possible soil for post-conviction attacks. The inevitable sequela of proceeding as the trial court did is a post-conviction motion, which requires the time of the trial court for an evidentiary hearing and the time of the prosecutor and of appointed counsel, followed by an appeal and further expenditure of time and money by the state and by appointed counsel, followed by still another appellate opinion, and then perhaps by a new trial.

---

1. The Standards relating to The Prosecution Function and the Defense Function, recommended by the Advisory Committee on the Prosecution and Defense Functions, American Bar Association, Sec. 5.1, Advising the defendant, state as follows: "(a) After informing himself fully on the facts and the law, the lawyer should advise the accused with complete candor concerning all aspects of the case, including his candid estimate of the probable outcome."