Thomas F. RHOADES, Appellant,

v.

STATE of Missouri, Respondent.

No. KCD 26310.

Missouri Court of Appeals,
Kansas City District.

Dec. 31, 1973.

Willard B. Bunch, Kansas City, for appellant.

G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, P. J., PRITCHARD, J. and HALL, Special Judge.

HALL, Special Judge.

Appellant has filed this appeal from a judgment denying his motion under Rules 27.25 and 27.26 V.A.M.R. to set aside consecutive sentences of ninety-nine years each entered September 26, 1938, upon his pleas of guilty to two separate charges of forcible rape.

He alleges error in that (1) his pleas of guilty were not voluntary and knowledgeable because no one advised him of the consequences of the pleas nor the range of punishment within which the court could sentence him; (2) he was not permitted to withdraw his guilty pleas, which were coerced from him by force; (3) he was denied effective assistance of counsel, who failed to file a motion to suppress his coerced confession, failed to advise him of the range of punishment for rape, and permitted him to plead guilty to both charges when one victim's statement exculpated him from the crime of rape.

The trial court appointed the public defender to represent movant, heard the evidence, and in a well-considered opinion overruled movant's contentions.

This motion, filed September 20, 1971, charges errors in movant's trial proceedings which occurred thirty-three years earlier, on September 26, 1938. While Rules 27.25 and 27.26 V.A.M.R. expressly permit such filing at any time during custody, the long unexplained delay by movant may be considered by the court in passing on movant's credibility and good faith.

As stated in State v. Hamel, 420 S.W.2d 264, at 267 (Mo.1967):

"While a motion under Rule 27.26 may be filed at any time and the doctrine of laches is inapplicable * * * it must be recognized that lapse of time may be considered in determining the good faith and credibility of one seeking post-conviction relief."

During this thirty-three year interim the trial judge who heard the case, the prosecuting attorney, movant's trial lawyer (whom he now charges with failure to properly represent him), have all died. One of the arresting officers is deceased and the other, if living, could not be located. All other persons, including the witnesses to movant's signed confession, who had any connection with the case are either deceased, unavailable, or have no recollection of the events. Thus, as a result of this long delay, there are no living witnesses to dispute movant's testimony.

Certain court files, police records, movant's signed confession, and the statement of Della Pearce, one of the complaining witnesses, were available and are a part of the record. No other records, including the stenographic notes of movant's plea, could be located.

Movant's confession recited that during the evening of March 14, 1938, he had been drinking at several taverns and observed Ruth Barker walking alone near 23rd and Troost. He went up behind her, grabbed her arm, and holding a knife at her back, forced her into an alley where he raped her. That sometime later he saw Della Pearce and her roommate, Mary Layson, get off the streetcar at 29th and Troost and walk west on 29th Street toward their home. He went up behind them, and holding his knife in his pocket so that it looked like a gun, said it was a stickup and to give him their purses. Mary Layson ran away and alerted the police.

Movant held Della Pearce and by threatening her with his knife forced her under a porch and made her remove her pants and lie down. He tried to insert his penis into her privates but he stated her privates were too small and he was not able to get his penis into her.

Della Pearce stated he tried to put his penis into her vagina but was unable to do so. He then moistened her privates and again tried to put his penis in her vagina.

At that time movant saw the flashlights of the police, who were searching for him, and hid in a nearby basementway, where he was arrested.

Movant resisted arrest and was taken by the arresting officers to General Hospital where he was left in custody for treatment of lacerations received during his arrest. On April 18, 1938, he was removed to the city jail, where he testified he was beaten by police prior to the signing of the confession on April 23, 1938. Three or four days later he was transferred to the county jail and had no complaints of his treatment during the five months he was confined there prior to entering his pleas of guilty.

The court appointed Mr. James Pouncey, an experienced criminal lawyer, to represent him in the five criminal charges which had been filed, growing out of these attacks. During the five-month period preceding the trial, Mr. Pouncey filed numerous pretrial motions signed by movant, in each of the five pending cases. These included motions to inspect hospital records of movant and the complaining witnesses, all photographs, all statements of the complaining witnesses and movant, including any weapon alleged to have been found on movant. In addition, Mr. Pouncey demonstrated his concern for the potential race prejudice inherent in the trial of movant for the rape of two white women by raising constitutional questions relating to exclusion of Negroes from the grand jury. When the cases were reached for trial September 26, 1938, Mr. Pouncey advised movant that he could not win and that he should plead guilty and throw himself on the mercy of the court. Movant agreed to do so, whereupon the State dismissed three of the five pending charges and movant pleaded guilty to the two charges of rape in question.

■ The court concurs with the trial court's finding that grave doubt is cast upon movant's credibility by reason of the fact that he waited thirty-three years to assert his claims of error. During this period he was released twice on probation— the first time on July 31, 1953, which was revoked two years later for parole violation, and the second time in 1966, which was revoked three years later for parole violation. He was undoubtedly aware that there were no surviving persons who could refute his statements, and it would seem logical that if there was any merit to the claims he now asserts, he would have made them long before the passage of such an inordinate length of time. Under such circumstances the trial court may reject such testimony, even though there is no contrary evidence, particularly as here where the only testimony comes from the movant himself, who has an obvious interest in the outcome. As stated in Skaggs v. State, 476 S.W.2d 524, 527 (Mo.1972) :

> " 'The trial court had the right to reject testimony on behalf of the movant, even though there was no contrary evidence offered at the hearing. That is particularly true when the favorable testimony came from appellant himself, with an obvious interest in the outcome, and the proceedings for relief arose sometime after the events in question and after death had removed from the scene persons with direct knowledge of the events.' Shoemake v. State, Mo.Sup., 462 S.W.2d 772, 775."

Movant's signed confession admitted two forcible rapes, each of which at that time carried possible sentences ranging from ten years to death. It further recited that it was made "of my own free will, no threats or promises being made to me, and I am signing it because it is the truth and the Prosecutor may use this statement against me if he so desires in the prosecution of this case." At that time movant was twenty-two years old and had a ninth grade education, plus previous criminal experience, having pleaded guilty to larceny for which he served one year in jail. He did not repudiate his confession until thirty-three years later when all four of the subscribing witnesses were either deceased or otherwise unavailable.

Movant contends that his plea of guilty must be set aside because neither the court which rendered judgment nor his trial counsel informed him of the possible range of punishment for conviction of rape. [This contention could neither be supported or rebutted since neither a transcript nor witnesses or other principals were any longer available.] It is a basic constitutional principle that a defendant who pleads guilty have an understanding of the consequences of his plea, including the possible range of punishment. State v. Blaylock, 394 S.W.2d 364 (Mo.1965). The sentence which could have been imposed for forcible rape on September 26, 1938, when movant was convicted, was prescribed by § 3999, RSMo 1929, at from two years imprisonment to death. Movant testified at the Rule 27.26 V.A.M.R. hearing that before he entered his plea he believed the possible range of punishment was from ten years to life imprisonment. The sentence imposed was ninety-nine years. It is evident that the minimum sentence that could have been imposed was less than what he at the least expected, and the sentence actually imposed was less than he thought possible. See: State v. Bobbitt, 465 S.W.2d 579, 582[5] (Mo. banc 1971). Movant does not contend that he was misled by anyone charged with the administration of justice. Nor has movant suffered any prejudice. No injustice has been committed where the actual sentence imposed is less than what movant believed [even if mistakenly] could have been imposed. Rule 27.25 V.A.M.R. permits the withdrawal of a plea of guilty only to correct manifest injustice. None appears.

We find that movant's contention that his pleas of guilty were not voluntary and knowledgeable and that he was not advised by his attorney of the range of punishment for his crimes is not supported by believable evidence and is accordingly overruled.

Movant further contends that the trial court erred in not permitting him to withdraw his pleas of guilty because they were coerced from him by force, in that his confession was the result of the beatings by the police some five months before his appearance in court when he pleaded guilty. We have previously ruled that movant's confession was not coerced as movant contends. His confession was confirmed in significant detail by the statement of Della Pearce, one of his victims, and the record does not support movant's contention that his pleas were coerced. Finding no error, the ruling of the trial court is affirmed.

Movant further contends that he was denied effective assistance of counsel, who permitted him to plead guilty to a charge of rape when the victim's statement exculpated him in that there was no showing of penetration in the attack on Della Pearce. In his statement movant admitted that he tried to insert his penis into her privates but they were too small and he was not able to get his penis into her. She stated he tried to insert his penis into her vagina two times but was unable to do so. Under the law, any penetration, however slight, is sufficient to constitute the crime of rape. As stated in State v. Coffman, 360 Mo. 782, 230 S.W.2d 761, 763 (1950):

"It is the law that penetration, however slight, is sufficient to constitute the crime of rape. State v. Hamilton, 304 Mo. 19, 263 S.W. 127, loc. cit. 129(2); People v. Esposti, 82 Cal.App.2d 76, 185 P.2d 866; State v. Dill, 3 Terry, Del., 533, 40 A.2d 443; Addison v. State, 198 Ga. 249, 31 S.E.2d 393, loc. cit. 394(1, 2); Fox v. Commonwealth, 299 Ky. 293, 185 S.W.2d 394, loc. cit. 399(9, 10). In the Addison case the Supreme Court of Georgia stated the rule as follows: 'Proof that the vagina was entered is not essential to a conviction of rape, but proof that the vulva was entered is sufficient to show penetration, although the vagina be intact and not penetrated in the least.'"

Movant necessarily had penetrated the victim's vulva several times in his efforts to

enter her vagina and was properly charged with the crime of rape.

We find that Mr. Pouncey represented the movant ably and in the highest traditions of the legal profession in protecting movant's constitutional rights, and movant's charges otherwise are not supported by the evidence.

The judgment is affirmed.

All concur.