PER CURIAM
The State of Missouri ("State") filed this interlocutory appeal pursuant to Section 547.200 RSMo 2000[1] challenging the trial court's Order granting Paul E. Jinkerson's ("Defendant") motion to suppress statements ("Motion"). We reverse and remand.
Factual and Procedural Background
On February 13, 2017, Defendant was charged by complaint with first degree murder in violation of Section 565.020, armed criminal action in violation of Section 571.015, tampering with physical evidence in violation of Section 575.100, and abandonment of a corpse in violation of Section 194.425 following the shooting death of Frank J. Ancona ("Ancona"). Defendant was held in the St. Francois County jail on the warrant issued on the complaint. Defendant retained an attorney ("Counsel"), and on February 15, 2017, Counsel entered his appearance. On February 21, 2017, Defendant was arraigned, and a plea of not guilty was entered.
On February 27, 2017, Detective Sergeant Matthew Wampler ("Detective Wampler") received a search warrant to collect a buccal swab from Defendant for evidentiary purposes, and when Detective Wampler met with Defendant at the designated interview room, he identified himself as the detective handling the homicide investigation. While collecting the sample, Detective Wampler told Defendant that he would like to speak with him about the events surrounding Ancona's death. Detective Wampler read Defendant his Miranda [2] rights, and after Defendant signed a form waiving those rights, Detective Wampler began to question Defendant, throughout which time Defendant made several "relevant statements" pertaining to the homicide investigation.
On November 1, 2017, Counsel filed a Motion seeking to suppress Defendant's *562 interview statements as well as the DNA evidence obtained from the buccal swab. Therein, Counsel granted that "Detective Wampler read the Defendant his Miranda Rights [and that] Defendant waived his Miranda Rights in writing," but argued that he "never gave permission to allow Detective Wampler to interview the Defendant" and that he "did not even know this interview was happening."
A hearing on the Motion was held on November 16, 2017. Detective Wampler, the sole witness to testify, explained that he did not seek permission from Counsel to interview Defendant because he was unaware that Defendant had obtained an attorney. Detective Wampler acknowledged that he had access to and knew how to use Case.net at the time of the interview, but noted that he does not use the service "to figure out things of the court." Detective Wampler testified that, even so, Defendant did not indicate at the outset of the interview that he did not want to speak with him, and Defendant never informed him that he retained Counsel. Detective Wampler testified that, moreover, he read Defendant his Miranda rights from a St. Francois County designated form which, in addition to a recitation of the rights, stated above a signature line that Defendant "fully understood his rights" and waived them. Detective Wampler testified that Defendant indicated he understood his rights, acknowledged the waiver, and signed the form after initialing every page. Detective Wampler testified that, thereafter, he asked Defendant "questions about where he was, what he did, [and] all of his connections with the case," and Defendant "just continue[d] to speak with [him] about anything [he] was asking."
Detective Wampler testified that, eventually, Defendant "indicated that he didn't want to answer any more questions," and at that point, Detective Wampler terminated the interview. Detective Wampler testified that beyond Defendant's failure to inform him that he had retained Counsel, Defendant never requested an attorney during the interview. Detective Wampler testified that he did not promise Defendant anything or coerce him into answering his questions, noted that Defendant did not appear to be intoxicated or under the influence of drugs, and explained that Defendant appeared to understand the waiver form and the questions he was asked.
On April 6, 2018, the trial court entered its order granting Defendant's Motion only as to his interview statements. In granting the Motion, the trial court noted, without elaboration, that Montejo v. Louisiana, 556 U.S. 778, 129 S.Ct. 2079, 173 L.Ed.2d 955 (2009), a case relied upon by the State in arguing against the suppression of Defendant's statements, "is factually distinguishable from the case at bar." The State's interlocutory appeal follows.
Standard of Review
Our review of a trial court's ruling on a motion to suppress evidence is limited to a determination of whether the evidence was sufficient to support the trial court's ruling. State v. Terry, 501 S.W.3d 456, 461 (Mo. App. W.D. 2016). We will reverse the trial court's ruling on a motion to suppress only if we find it to be clearly erroneous. State v. McNeely, 358 S.W.3d 65, 68 (Mo. banc 2012), aff'd, 569 U.S. 141, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013). A ruling is clearly erroneous only if we are left with a "definite and firm belief that a mistake has been made." Terry, 501 S.W.3d at 461 (quoting State v. Wilson, 169 S.W.3d 870, 875 (Mo. App. W.D. 2005) ). Thus, we will not reverse the ruling if it was plausible in light of the record when viewed in its entirety even if we would have weighed the evidence differently. Id. However, if "the issue to be decided involves *563 the constitutional protection against forced self-incrimination, our review of the trial court's ruling is a two-part inquiry: we defer to the trial court's determinations of witness credibility and findings of fact, but consider the court's conclusions of law de novo." State v. O'Neal, 392 S.W.3d 556, 565 (Mo. App. W.D. 2013) (quoting State v. Sardeson, 220 S.W.3d 458, 464-65 (Mo. App. S.D. 2007) ).
Discussion
In the State's sole point on appeal, it argues that the trial court erred in sustaining Defendant's Motion suppressing his statements because Defendant voluntarily, knowingly, and intelligently waived his Sixth Amendment right to counsel during his interview with Detective Wampler. We agree.
"Criminal defendants ... have the right to counsel under the Sixth Amendment, which attaches at the time adversary judicial proceedings have been initiated against them." State v. Beasley, 416 S.W.3d 357, 365 (Mo. App. E.D. 2013) (citing Kirby v. Illinois, 406 U.S. 682, 688, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) ). The initiation of adversary judicial proceedings can occur "by way of formal charge, preliminary hearing, indictment, information, or arraignment." State v. Umphfrey, 242 S.W.3d 437, 441-42 (Mo. App. E.D. 2007) (quoting State v. Washington, 9 S.W.3d 671, 675 (Mo. App. E.D. 1999) ). Upon initiation of the adversary judicial process, the Sixth Amendment guarantees to a defendant the right to have counsel present during all critical stages of the criminal proceedings. Williams v. State, 367 S.W.3d 652, 654 (Mo. App. E.D. 2012) ; Montejo, 556 U.S. at 786, 129 S.Ct. 2079. Interrogation by the State is considered a "critical stage" of the criminal proceedings." Montejo, 556 U.S. at 786, 129 S.Ct. 2079. Thus, the right "is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent." Beasley, 416 S.W.3d at 365 (quoting Maine v. Moulton, 474 U.S. 159, 176, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985) ). Such incriminating statements obtained in violation of a defendant's Sixth Amendment right to counsel are inadmissible. Id. at 366 (citing Moulton, 474 U.S. at 180, 106 S.Ct. 477 ).
However, the United States Supreme Court has explained that it is "beyond doubt that the Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent." Montejo, 556 U.S. at 786, 129 S.Ct. 2079 ; Patterson v. Illinois, 487 U.S. 285, 290-91, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988). "The defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled." Montejo, 556 U.S. at 786, 129 S.Ct. 2079 (citing Michigan v. Harvey, 494 U.S. 344, 352-53, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990) ); see also Moran v. Burbine, 475 U.S. 412, 422-23, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) (while defendant was unaware that he had an attorney, he validly waived his right to counsel before police questioning where he comprehended his Miranda rights). "And when a defendant is read his Miranda rights (which include the right to have counsel present during interrogation) and agrees to waive those rights, that typically does the trick, even though the Miranda rights purportedly have their source in the Fifth Amendment" because the Miranda warnings sufficiently apprise the defendant of his Sixth Amendment rights. Id. at 786, 129 S.Ct. 2079 (emphasis in original).
Here, the State argues that because the United States Supreme Court, in Montejo, overruled *564 Michigan v. Jackson, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), which held that a defendant's waiver of the Sixth Amendment right to counsel is presumptively invalid if made after having previously asserted the right at an arraignment, the Jackson presumption could not have applied to Defendant. Thus, the State argues that Defendant validly waived his right to an attorney during his interview with Detective Wampler despite having previously retained Counsel. Defendant counters that Montejo is distinguishable because, while here Defendant specifically asserted his Sixth Amendment right to an attorney by retaining Counsel, the defendant in Montejo had an attorney appointed for him by the court, such that he never personally invoked his right. We, however, do not read Montejo so narrowly and are constrained by its holding.
In Michigan v. Jackson, the United States Supreme Court announced the prophylactic rule that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." 475 U.S. at 636, 106 S.Ct. 1404. In other words, such a waiver is presumed involuntary "based on the supposition that suspects who assert their right to counsel are unlikely to waive that right voluntarily in subsequent interactions with police." Montejo, 556 U.S. at 788, 129 S.Ct. 2079 (quoting Michigan v. Harvey, 494 U.S. 344, 350, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990) ) (internal quotation marks omitted).
In Montejo, however, the Supreme Court overruled Jackson because it found the rule had since proved "unworkable." Id. at 792, 129 S.Ct. 2079. In Montejo, after a preliminary hearing where the defendant was charged with murder and appointed counsel, but before he had the opportunity to meet with his attorney, two police detectives met with the defendant, requesting that he show them where he disposed of the murder weapon. Id. at 781-82, 129 S.Ct. 2079. Once read his Miranda rights, the defendant agreed to accompany them, and during the trip, he wrote an inculpatory apology letter to the murder victim's widow, which was admitted into evidence over objection at trial. Id. at 782, 129 S.Ct. 2079. Relying on the Jackson presumption, the defendant's counsel argued that the letter should have been suppressed. Id. In rejecting that argument, the Supreme Court noted that because the procedures by which criminal defendants obtain counsel vary throughout the states, application of the Jackson rule tended not to be uniformly applied due to "arbitrary and anomalous distinctions between defendants in different states." Id. at 784, 129 S.Ct. 2079. The Court noted that, for example, in nearly half of the States-as was the case with the Montejo defendant-counsel could be automatically appointed sua sponte by the court or upon a finding of indigency such that those defendants never have the opportunity to explicitly assert, of their own accord, their Sixth Amendment right to counsel so as to trigger the Jackson protection. Id. at 783-84, 129 S.Ct. 2079.
Thus, finding the Jackson rule impracticable, the Montejo Court overruled Jackson and determined that, in a situation such as the defendant's, where he did not explicitly invoke his right to counsel himself, "there is no basis for a presumption that any subsequent waiver of the right to counsel will be involuntary." Id. at 789, 129 S.Ct. 2079. The Court went further, however, and also specifically rejected the defendant's argument "that no represented defendant can ever be approached by the State and asked to consent to interrogation." Id. (emphasis in original). The Montejo Court determined that acceptance of the defendant's argument would tend to *565 minimize "costs to the truth-seeking process and the criminal justice system," since law enforcement officers would be deterred "from even trying to obtain voluntary confessions." Id. at 796, 129 S.Ct. 2079. The Court thus explained that "no reason exists to prohibit the police from inquiring" whether a defendant would agree to speak with them without an attorney present because "[u]nder the Miranda- Edwards- Minnick line of cases ..., a defendant who does not want to speak to the police without counsel present need only say as much when he is first approached and given the Miranda warnings" since at that point, "no subsequent interrogation may take place until counsel is present." Id. at 794, 129 S.Ct. 2079 ; see also Miranda v. Arizona, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (accused must be warned of constitutional rights, including right to the presence of an attorney, prior to custodial interrogation), Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (when accused expresses desire to deal with police only through counsel, no further interrogation is permitted until counsel has been made available to him unless accused initiates further communication), and Minnick v. Mississippi, 498 U.S. 146, 153, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990) (when accused requests counsel, interrogation must cease and may not reinitiate without counsel present). The Court, therefore, noted that if Miranda, Edwards, and Minnick protect a suspect's choice not to speak without an attorney present before arraignment, then they "suffice to protect that same choice after arraignment, when Sixth Amendment rights have attached." Id. at 795, 129 S.Ct. 2079.
This Court, in turn, recently opined upon Montejo's overruling of Jackson and its impact upon our prior cases relying upon and applying the Jackson rule:
Defendant's argument recites a more restrictive rule from past Missouri appellate decisions, that once an accused has invoked his Sixth Amendment right to counsel, police may not initiate subsequent interrogation for the pending offense without notifying counsel or having counsel present. See State v. Dixon, 916 S.W.2d 834, 837 (Mo. App. W.D. 1995) ; State v. Owens, 827 S.W.2d 226, 228 (Mo. App. E.D. 1991). These cases are based on a prophylactic rule announced by the United States Supreme Court in [ Jackson, 475 U.S. at 636, 106 S.Ct. 1404 ], that once attached, subsequent waiver of a defendant's Sixth Amendment right to counsel is presumed involuntary. However, Jackson has since been overruled. See Montejo [, 556 U.S. at 792, 129 S.Ct. 2079 ]. Further, the Montejo Court specifically rejected the Jackson-based argument that "no represented defendant can ever be approached by the State and asked to consent to interrogation."
Beasley, 416 S.W.3d at 365 n.7 (emphasis in original).
Here, it is clear that Defendant's Sixth Amendment right to counsel attached at the time Defendant was charged. Beasley, 416 S.W.3d at 365. It is also clear that Defendant invoked his Sixth Amendment right to an attorney by retaining Counsel. See State v. Wilson, 816 S.W.2d 301, 304 (Mo. App. S.D. 1991) ("The right of an accused to counsel has two aspects: the right to retain counsel and the right, in certain situations, to have counsel appointed."). However, because this Court has previously recognized the Montejo Court's determination that the " Jackson rule ... does not 'pay its way,' " Defendant cannot now benefit from a presumption that any waiver of his right to an attorney is invalid solely upon the basis that he retained Counsel at an earlier point in the proceedings. Montejo, 556 U.S. at 797, 129 S.Ct. 2079 (quoting United States v. Leon, 468 U.S. 897, 907-08, n.6, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) ).
*566 Thus, under Montejo, Defendant was free to waive his Sixth Amendment right to counsel "so long as relinquishment of the right is voluntary, knowing, and intelligent." Id. at 786, 129 S.Ct. 2079. At the suppression hearing, Detective Wampler, the sole witness to testify, explained that he read Defendant his Miranda rights from a St. Francois County designated form, which contained a waiver of said rights. Detective Wampler testified that Defendant indicated he understood his rights and that he appeared to understand the waiver. Detective Wampler testified that Defendant neither requested an attorney nor told him that he had retained Counsel. Instead, Defendant signed the waiver after initialing every page and answered Detective Wampler's questions until he indicated to Detective Wampler that he did not want to answer any more, at which time the questioning ceased. "[A]n accused who is admonished with the [ Miranda warnings] has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one." Id. at 786-87, 129 S.Ct. 2079 (quoting Patterson, 487 U.S. at 296, 108 S.Ct. 2389 ). Because Defendant knowingly and intelligently waived his Sixth Amendment right to an attorney after being apprised of his Miranda warnings at his interview with Detective Wampler, the trial court clearly erred in granting Defendant's Motion. Point granted.
Conclusion
The judgment is reversed, and the cause remanded for further proceedings consistent with this opinion.

Unless otherwise indicated, all further statutory references are to RSMo 2000.

Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Among the rights of an interrogated person encompassed by Miranda are the rights to consult with an attorney or to have an attorney appointed to represent him if he is indigent. Id. at 473, 86 S.Ct. 1602. Miranda makes clear that, in order to ensure that the warning of one's right to counsel is not hollow, it must be conveyed in such a way that conveys to an individual the knowledge that he has a right to have counsel present. Id.