

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD84486 |
| | ) | |
| ALLEN JOHN DALE ANDERSON, | ) | FILED: October 4, 2022 |
| Appellant. | ) | |

**Appeal from the Circuit Court of Dekalb County**
**The Honorable Roger M. Prokes, Judge**

**Before Division One: Janet Sutton, P.J.,**
**and Alok Ahuja, and Karen King Mitchell, JJ.**

Following a bench trial in the Circuit Court of Dekalb County, Allen Anderson was convicted of one count of statutory rape in the second degree, child molestation in the second degree, sexual misconduct, and unlawful possession of drug paraphernalia. Anderson was sentenced to a total of 15 years' imprisonment, and ordered to pay a $1.00 fine. He appeals. He argues that the State failed to present sufficient evidence that he penetrated the Victim's genitalia with his penis, as necessary to support his conviction of second-degree statutory rape. Anderson also contends that the circuit court erred in overruling his motion to suppress his pretrial statements to law enforcement, because he was interrogated in violation of his Sixth Amendment right to counsel. We affirm.

## Factual Background

The Victim was born in 2007. On August 2, 2018, she gave her mother a note stating:

Mom I am [writing] this because I thi[n]k you should give the dog to someone [e]lse because [Anderson] tried to make his bad spot fit in my bad spot I am sorry I didn't tell you this sooner it was to protect [the Victim's younger sibling].

After reading the note, Mother brought the Victim and her note to the Cameron Police Department, where the Victim spoke with Dekalb County Sheriff's Deputy Tracy Neill. The Victim told Deputy Neill that Anderson "did things to her that she did not like" and "hurts her" "really, really badly." According to Deputy Neill, the Victim stated that Anderson "puts his no-no in her no-no." The Victim stated that the abuse would occur on more than half of the nights when she was staying at Anderson's residence. She stated that the last incident occurred on the last occasion when she stayed at his home, at the end of July 2018.

Deputy Neill obtained a search warrant for Anderson's residence, and scheduled an interview of the Victim at a Child Advocacy Center in St. Joseph. The search warrant was executed the next day, August 3, 2018. In Anderson's residence, police found several types of smoking pipes, a scale, a glass pipe with white residue, and a bag of a crystal substance. A laboratory analysis indicated that the paraphernalia contained methamphetamine. The Cameron Police Department arrested Anderson on the same day.

On August 6, 2018, the Victim was interviewed at the Child Advocacy Center. A video recording of the Victim's forensic interview was played for the jury. In the interview, the Victim stated that Anderson "tried to do what grown-ups do to me." She stated that Anderson would enter her room at night wearing only his underwear, get under the covers of her bed, and remove the Victim's pants and underwear. The Victim stated that Anderson "rub[bed] his bad spot between mine or kind of st[u]ck it in mine but it would never work . . . the rubbing part did [work] but the sticking part didn't." When asked if Anderson's "bad spot" went partway inside her, the Victim replied, "[n]o it doesn't but it does hurt." The Victim also

2

described how Anderson would "pull me against him or . . . turn me backwards and try to stick it up me . . . try to push it." The Victim also recounted that Anderson rubbed his "bad spot" on her "bad spot" while they were face-to-face. During the interview, the Victim labeled the male and female genitalia on two anatomically correct diagrams as the "bad spot[s]." The Victim reported that the abuse began when she was ten years old, approximately seven to eight months before her forensic interview, and that the last incident had been the week before the interview, when she last stayed at Anderson's home.

Anderson was arraigned on August 7, 2018. Sheriff Kasey Keesaman was serving as the court's bailiff. After Anderson's arraignment, Sheriff Keesaman went to the holding cell where Anderson was detained and asked to speak with him. Sheriff Keesaman read Anderson his *Miranda*[1] rights and handed him a waiver form. The waiver form indicates that Anderson read his rights aloud. Anderson put a check mark next to the explanation of each of his individual rights, including next to the statements that he had a right "to talk to a lawyer and have him/her present with [Anderson] while [he was] being questioned," and the statement that he had a right to an appointed attorney if he could not afford one. Anderson signed the waiver form, attesting that

> I have read this statement of my rights or this statement of my rights have [*sic*] been read to me and I understand what my rights are. Keeping these rights in mind I do not want a lawyer present at this time. I am willing to make a statement and answer questions. I understand and know what I am doing. No promises, threats or pressure of any kind has been used against me.

Sheriff Keesaman testified that he began the interview by telling Anderson that he could refuse to answer any specific question, or that he could stop the interview entirely at any time. Sheriff Keesaman described Anderson as "very calm

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

3

and polite, and he was very lucid during the interview." The interrogation was approximately an hour long. Sheriff Keesaman testified during the suppression hearing that Anderson did not request an attorney at any time during the interview, and that he would have terminated his interrogation immediately if Anderson had done so. Sheriff Keesaman also testified that he saw that Anderson had a blank application for public defender services during the interrogation. Sheriff Keesaman testified that in his lengthy career he had observed that not all of the defendants who received a public defender application actually completed the form, and some chose instead to hire private counsel.

During his interview, Anderson described several sexual incidents involving the Victim, although he claimed that he had never initiated sexual contact with her. Thus, Anderson stated that on one occasion, he awoke with his pants down, and the Victim lying naked next to him. He described another occasion where he woke up to the Victim "lying belly to belly with him. His penis was erect, they both had their clothes on." Anderson said that he was uncertain if anything sexual happened during either of these events. Anderson told Sheriff Keesaman that there had also been multiple occasions in which he had fallen asleep, and woke up to the Victim putting his hand down her pants and "manipulating his fingers on her vagina."

During his interview Anderson also admitted that he used methamphetamine on the weekends when the Victim was not with him.

The State charged Anderson with statutory rape in the second degree; statutory sodomy in the second degree; child molestation in the second degree; sexual misconduct involving a child under 15; incest; and unlawful possession of drug paraphernalia.

Anderson waived his right to a jury trial. Following a bench trial, the court found him guilty of second-degree statutory rape, second-degree child molestation, sexual misconduct, and possession of drug paraphernalia. The court acquitted

4

Anderson of second-degree statutory sodomy and incest. Anderson was sentenced to seven years' imprisonment for statutory rape, fifteen years for child molestation, and four years for sexual misconduct; the court also imposed a $1.00 fine for possession of paraphernalia. The court ordered the sentences for statutory rape and sexual misconduct to run consecutively, but the sentences to otherwise run concurrently, resulting in a total term of imprisonment of fifteen years.

Anderson appeals.

## Discussion

Anderson raises two Points on appeal. He first argues that the circuit court erred in overruling his motion for judgment of acquittal as to the statutory rape count. Anderson argues that there was insufficient evidence to prove that his penis penetrated the Victim's genitalia, as necessary to establish that he engaged in sexual intercourse with the Victim. In his second Point, Anderson contends that the circuit court erred in overruling his motion to suppress statements he made to Sheriff Keesaman during his post-arraignment interrogation, because the interrogation violated Anderson's Sixth Amendment right to counsel. Although Anderson executed a written waiver form, he contends that his waiver was ineffective because Sheriff Keesaman did not allow him a reasonable time to obtain appointed counsel.

> The standard of review in a court-tried case is the same as in a jury-tried case. When considering the sufficiency of the evidence on appeal, this Court must determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt. [T]his Court accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the finding. Even if the evidence would support two equally valid inferences, only the inference that supports the finding of guilt can be considered. The function of the reviewing court is not to reweigh the evidence, but to determine if the conviction is supported by sufficient evidence.

> The reliability, credibility, and weight of witness testimony are for the fact-finder to determine. It is within the fact-finder's province

5

to believe all, some, or none of the witness' testimony in arriving at its decision.

*State v. Cannafax*, 344 S.W.3d 279, 284 (Mo. App. S.D. 2011) (citations and internal quotation marks omitted).

When addressing a circuit court's ruling on a motion to suppress evidence, this Court's review is "limited to a determination of whether there is substantial evidence to support its decision." *State v. Wilson*, 169 S.W.3d 870, 875 (Mo. App. W.D. 2005). "We will affirm the trial court's ruling on a motion to suppress unless the ruling was clearly erroneous." *State v. Norman*, 431 S.W.3d 563, 568 (Mo. App. E.D. 2014). "The trial court's ruling is clearly erroneous if this court is left with a definite and firm belief a mistake has been made." *Wilson*, 169 S.W.3d at 875.

## I.

Anderson's first Point contends that there was insufficient evidence to support his conviction of second-degree statutory rape.

Under § 566.034.1,[2] "[a] person commits the offense of statutory rape in the second degree if being twenty-one years of age or older, he or she has sexual intercourse with another person who is less than seventeen years of age." "Sexual intercourse" is defined as "any penetration, however slight, of the female genitalia by the penis." § 566.010(7).

Significantly, the definition of "sexual intercourse" does not require penetration *of the vagina*; instead, "sexual intercourse" is defined more broadly to including "any" penetration *"of the female genitalia."* (Emphasis added.) The female genitalia "'include a woman's vulva and external genitals.'" *State v. Barbee*, 568 S.W.3d 28, 31 (Mo. App. W.D. 2018) (quoting *State v. Dunn*, 7 S.W.3d 427, 430 (Mo. App. W.D. 1999)); *accord*, *State v. Hankins*, 531 S.W.3d 77, 82 (Mo. App. S.D.

---

[2] Statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated by the 2017 Supplement.

6

2017) (quoting *State v. Ray*, 852 S.W.2d 165, 169 (Mo. App. S.D. 1993)). In *State v. Coffman*, 230 S.W.2d 761 (Mo. 1950), the Missouri Supreme Court stated "the rule" to be that "'[p]roof that the vagina was entered is not essential to a conviction of rape, but proof that the vulva was entered is sufficient to show penetration, although the vagina be intact and not penetrated in the least.'" *Id.* at 786 (quoting *Addison v. State*, 31 S.E.2d 393, 394 (Ga. 1944)).

A conviction of statutory rape requires proof of *penetration*; "mere 'touching does not suffice; there must be "penetration, however slight."'" *Barbee*, 568 S.W.3d at 31 (quoting *State v. Sanders*, 481 S.W.3d 907, 913 (Mo. App. E.D. 2016)). "Proof of penetration may be shown by direct or circumstantial evidence, and slight proof of penetration is sufficient." *Barbee*, 568 S.W.3d at 31 (citations and internal quotation marks omitted).

Anderson emphasizes that the Victim told the forensic interviewer that Anderson "tried to" penetrate her, but that he did not actually insert his penis inside her. Anderson contends that "there was no evidence that his penis touched [the Victim's] genitals in any way beyond mere surface contact."

The State presented sufficient evidence from which a fact-finder could have reasonably inferred that penetration "of the female genitalia by the penis" occurred in this case. According to Deputy Neill, the Victim stated that Anderson "puts his no-no *in* her no-no." Moreover, at one point during her forensic interview the Victim stated that Anderson "kind of st[u]ck [his penis] *in*" her genitals. Although these statements may have been inconsistent with other statements by the Victim (which denied that penetration had occurred), "'inconsistencies or contradictions in statements by young children relating to sexual experience do not, by themselves, deprive the statements of all probative force.' '[I]n cases involving such young victims and sensitive and embarrassing subject matters, it is common for the testimony of a victim of tender years to contain some variations, contradictions or

7

lapses in memory.'" *State v. Gibbons*, 629 S.W.3d 60, 90 (Mo. App. W.D. 2021) (quoting *State v. Sprinkle*, 122 S.W.3d 652, 663 (Mo. App. W.D. 2003)). A fact-finder "may accept or reject all, some or none of a witness's testimony, in addition to, resolving any contradictions or conflicts in that witness's testimony." *State v. Sexton*, 929 S.W.2d 909, 916 (Mo. App. W.D. 1996) (internal citations omitted). "[W]hen there is conflicting evidence, an appellate court presumes that the fact-finder 'resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *State v. Blackmon*, 421 S.W.3d 473, 475 (Mo. App. S.D. 2013) (quoting *State v. Chaney*, 967 S.W.2d 47, 53 (Mo. banc 1998)). The Victim's statements that Anderson put his penis "in" her genitals clearly supports a finding of penetration.

In addition, the evidence that Anderson *attempted* to insert his penis in the Victim's vagina would itself establish "penetration" in the relevant sense. The Victim stated multiple times that Anderson attempted, but was unable, to put his penis inside of her. Thus, the note the Victim provided to her mother, in which she first disclosed the sexual abuse, stated that Anderson "tried to make his bad spot fit in my bad spot." In her interview, the Victim stated that Anderson "tried to do what grown-ups do to me," and that Anderson "tr[ied] to stick it up me," and "tr[ied] to push it in." Although the Victim's description may not have been precise, a fact-finder could reasonably interpret these statements to indicate that Anderson had attempted to insert his penis *in her vagina*. As explained above, penetration of the vagina is not required to support a conviction of statutory rape; instead, penetration of the external genitalia is sufficient. While vaginal penetration is not required, the evidence that Anderson *attempted* to insert his penis in the Victim's vagina is sufficient to support a finding that he did, in fact, penetrate at least the Victim's external genitalia. *See Rhoades v. State*, 504 S.W.2d 291, 294-95 (Mo. App. 1973) ("Movant necessarily had penetrated the victim's vulva several times in his efforts to enter her vagina and was properly charged with the crime of rape.").

8

Significantly, the Victim stated that Anderson's attempts to penetrate her were painful; indeed, in speaking with Deputy Neill, she stated that Anderson's actions "hurt[ ] her" "really, really badly." The Victim's description of pain, as Anderson attempted to engage in sexual intercourse, strongly supports an inference of penetration. Thus, in *State v. Famber*, 214 S.W.2d 40 (Mo. 1948), the Missouri Supreme Court found sufficient evidence of penetration where a ten-year-old victim testified that the defendant's actions caused her pain, even though on cross-examination "she made the admission that she did not know whether she had been entered or whether the contact was only external." *Id.* at 43. Cases from other jurisdictions likewise hold that penetration can be inferred from the pain a victim experiences as a defendant attempts to engage in intercourse. *See*, *e.g.*, *State v. Toohey*, 816 N.W.2d 120, 130-31 (S.D. 2012) ("rational jurors could find proof of penetration beyond a reasonable doubt" where the child victim said the defendant pulled her shorts and underwear down, "'touched' her 'front' and 'it hurt'"); *Velazquez v. Commonwealth*, 557 S.E.2d 213, 220 (Va. 2002) (a sharp pain in the victim's vagina was sufficient to prove penile penetration, even though "she did not know what caused the sharp pain"); *Swain v. State*, 629 So. 2d 699, 701 (Ala. 1993) ("victim's testimony that Swain had 'stuck' his penis between her legs and that it hurt is sufficient evidence from which the jury could have inferred that Swain had actually penetrated the victim's labia pudendum"); *State v. Mathis*, 340 S.E.2d 538, 541 (S.C. 1986) (pain was sufficient evidence of penetration, even where the child victim "could not remember if he put it inside her body").

Anderson attempts to liken his case to *State v. Barbee*, 568 S.W.3d 28 (Mo. App. W.D. 2018), in which we recently reversed a first-degree statutory rape conviction based on insufficient evidence that the defendant penetrated the genitalia of his eight-year-old female victim. In *Barbee*, however, the evidence only "demonstrate[d] that Barbee's penis 'touched' Victim's genitals. But there was no

9

evidence that Barbee's penis touched Victim's genitals in any way beyond mere surface contact." *Barbee*, 568 S.W.3d at 32. Unlike here, in *Barbee* the victim never stated that the defendant actually put his penis "in" her genitals, that he had *attempted* to put his penis in her vagina, or that she experienced pain as the defendant attempted to engage in intercourse. *Barbee* is factually distinguishable from this case.

The fact that the Victim may have used imprecise terminology like "bad spot" and "no-no" to describe her genitals, and was vague in describing how far any attempted sexual intercourse actually progressed, does not create a fatal gap in the State's evidence. "The failure of a child victim of a sex crime to use anatomically correct terminology . . . does not render the evidence of sexual contact insufficient." *State v. Hankins*, 531 S.W.3d 77, 82 (Mo. App. S.D. 2017). In her forensic interview, the Victim circled the genitalia on the diagrams of male and female bodies to indicate what she meant by "bad spot." Moreover, from the acts and sensations which the Victim described, the circuit court as fact-finder could reasonably infer that Anderson attempted to insert his penis into her vagina, and that Anderson's attempts progressed at least as far as to penetrate the Victim's external genitalia (and also likely her vagina to some degree).

The evidence was sufficient to prove beyond a reasonable doubt that Anderson's penis penetrated the Victim's genitalia, as necessary to sustain his conviction of second-degree statutory rape. Point I is denied.

## II.

Anderson's second Point contends that Sheriff Keesaman's interrogation violated Anderson's Sixth Amendment right to counsel, and that the statements Anderson made during that interrogation should accordingly have been suppressed. Anderson does not dispute that he was advised of his *Miranda* rights and signed a waiver; nor does he contend that Sheriff Keesaman ignored an express invocation of

10

Anderson's right to counsel. Instead, the crux of Anderson's argument is that his right to counsel was violated because, following his arraignment, "Sheriff Keesaman did not provide an opportunity for Mr. Anderson to apply for a public defender but instead immediately questioned him, circumventing Mr. Anderson's right to counsel and rendering his waiver of counsel unknowing and involuntary."

"[O]nce the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings. Interrogation by the State is such a stage." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (citations omitted). Once the right to counsel has attached, "if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates the conversation." *State v. Meinhardt*, 900 S.W.2d 242, 245 (Mo. App. S.D. 1995). "To invoke the right to counsel, an accused must make an unambiguous and specific request for counsel in dealing with a custodial interrogation." *State v. Haslett*, 283 S.W.3d 769, 784 (Mo. App. S.D. 2009). "The desire to have counsel present must be sufficiently and clearly articulated so that a reasonable police officer under the circumstances would understand the statement to be a request for an attorney." *State v. Norman*, 431 S.W.3d 563, 569 (Mo. App. E.D. 2014).

Anderson asserts in his brief that "[t]here is no evidence that Mr. Anderson made any express or implied waiver of counsel." That is simply untrue. The record contains testimony from Sheriff Keesaman that Anderson was willing to talk to him without an attorney present. More importantly, the record contains Anderson's signed waiver form, in which he acknowledged that he had a right "to talk to a lawyer and have him/her present" during questioning, but that he "d[id] not want a lawyer present at this time."

11

"[W]hen a defendant is read his *Miranda* rights (which include the right to have counsel present during interrogation) and agrees to waive those rights, that typically does the trick, even though the *Miranda* rights purportedly have their source in the Fifth Amendment" because the *Miranda* warnings sufficiently apprise the defendant of his Sixth Amendment rights.

*State v. Jinkerson*, 554 S.W.3d 559, 563 (Mo. App. E.D. 2018) (quoting *Montejo v. La.*, 556 U.S. 778, 786 (2009)).

Anderson's briefing implies that the fact that he acquired a public defender application during his arraignment, and that he was holding the application in his hands during his interrogation, is somehow the equivalent of an assertion of his right to counsel, and vitiates the effect of the written waiver he executed. Thus, Anderson argues that he "could not have provided a knowing and intelligent waiver of his right to counsel when he had only asserted that right moments before in court at his initial arraignment." Anderson cites no authority for the proposition that requesting or possessing an application for public defender services is the equivalent of an invocation of the right to counsel, and we are aware of none. To the contrary, caselaw requires "an unambiguous and specific request for counsel." *Haslett*, 283 S.W.3d at 784; *see also State v. Harris*, 305 S.W.3d 482, 485 (Mo. App. E.D. 2010) (invocation of right to counsel requires "an unambiguous, unequivocal and specific request for counsel").

The fact that Anderson was holding an uncompleted application for public defender services cannot constitute an "unambiguous and specific request for counsel" under the Missouri Supreme Court's decision in *State v. Reese*, 795 S.W.2d 69 (Mo. 1990). In *Reese*, a criminal defendant actually *completed* an application for public defender services, "checking 'yes' next to the question, 'Are you requesting that the public defender be provided as your lawyer?'" *Id.* at 71. Despite completing the application, after being given his *Miranda* warnings the defendant

12

told officers seeking to interrogate him following his arraignment that "'I don't need an attorney and I don't want one.'" *Id.*

Even though the defendant in *Reese* had actually completed a form requesting appointment of a public defender, the Missouri Supreme Court held that he effectively waived his right to counsel before making incriminating statements during his post-arraignment interrogation. In *Reese*, the circuit court found:

> The public defender form was not directed to the [interrogating] officer and did not interject ambiguity into the clear unequivocal assertions of the defendant [that he did not want an attorney during questioning], some made only moments before the form was filled out. Even if we assume the form in question was a request for counsel it is equally clear that such request was that an attorney be provided for him in the future, at his trial or at the earliest the preliminary hearing, and not in the questioning which was taking place at that time . . . .

*Id.* at 73 (quoting circuit court's findings). The Missouri Supreme Court affirmed. It emphasized that, at the time of the defendant's interrogation,

> [c]ounsel had not been appointed. The defendant's eligibility for the public defender's services had not been determined. There was no request for counsel during interrogation. There was, by contrast, an explicit waiver. The authorities made it clear to the defendant, numerous times, that counsel would be available to him if he would only say the word. The mere mention of counsel by the defendant is not sufficient to preclude further police questioning. There must be a request.

*Id.* (footnote omitted).

Given *Reese*'s holding that an explicit waiver of the right to counsel is effective, even <u>after</u> the defendant has completed an application for public defender services, we reject Anderson's argument that his express waiver is ineffective because he was in possession of an *uncompleted* application form.

Moreover, even if Anderson had actually been represented by counsel at the time Sheriff Keesaman approached him, this would not have prevented Anderson from effectively waiving his right to have counsel present at an interrogation, after being advised of his *Miranda* rights. *See Jinkerson*, 554 S.W.3d at 565-66 (holding

13

that police may properly solicit a defendant's agreement to an uncounseled interrogation, even after the defendant is represented by counsel); *State v. Beasley*, 416 S.W.3d 357, 365 n.7 (Mo. App. E.D. 2013) (same).

Anderson cites § 544.350, which specifies that, in conducting a preliminary hearing, "[t]he associate circuit judge shall strictly inform the prisoner of the charge made against him, and read to him the complaint, if requested to do so, and he shall allow the prisoner reasonable time to advise with his counsel, and, for that purpose to send for counsel, if he require it." Nothing in § 544.350 suggests that it applies to law enforcement officers conducting interrogations, and Anderson cites no authority applying it in this context.

Anderson also contends in his briefing that "his efforts to get representation were obstructed by [Sheriff Keesaman's] interview." There is nothing in the record, however, to suggest that Sheriff Keesaman did anything to interfere with Anderson's efforts to invoke his right to counsel, or to procure the services of either appointed or retained counsel. To the contrary, Sheriff Keesaman testified that he would have terminated the interrogation immediately if Anderson had invoked his right to counsel, and that Anderson never requested to be given time to complete the public defender application form.

From all that appears, Anderson knowingly and voluntarily chose to speak with Sheriff Keesaman without a lawyer present. Anderson does not point to any evidence that would support a finding that his explicit, written waiver of his rights was not knowing and voluntary, or that Sheriff Keesaman's actions prevented Anderson from expressing his wish to have counsel present. Anderson's waiver of his right to counsel was valid, and the circuit court did not clearly err in denying his motion to suppress statements he made during his interrogation.

Even if Anderson's statements should have been suppressed, however, reversal would not be warranted. "A properly-preserved federal constitutional error

14

in a criminal trial does not require reversal and remand for a new trial if the reviewing court determines that the error was harmless beyond a reasonable doubt." *State v. Lopez*, 128 S.W.3d 195, 201 (Mo. App. S.D. 2004). "We determine whether a constitutional error is harmless by deciding whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *State v. Hill*, 247 S.W.3d 34, 41-42 (Mo. App. E.D. 2008) (internal quotation marks omitted).

Anderson's statements to Sheriff Keesaman did not directly substantiate any of the charges of which he was convicted: statutory rape, child molestation, and sexual misconduct. The charges of which Anderson was convicted were proven by *the Victim's* statements and testimony, not by *Anderson*'s pretrial statements. Moreover, the circuit court explicitly stated from the bench that it was acquitting Anderson of two other charges because those charges were supported only by Anderson's admissions during his interrogation, *which the court found <u>not</u> to be credible*:

> As to Count Number 2, statutory sodomy in the second degree, I cannot bring myself to find guilt. I know that there's a statement by the your-now-Sheriff that was made on this. Some of the stuff that Mr. Anderson said in that statement was almost beyond belief, and I am having a real problem with, you know, disregarding the stuff that was, you know, pretty goofy that he said in that statement and using the other part of it to find him guilty of sodomy.
>
> So I'm finding him not guilty on Count 2.
>
> . . . .
>
> In order [to prove incest as charged in Count 5], it would have to be proven that the touching was by the hand, the mouth, tongue, or anus of another person. The only testimony comes in under the hand, and that goes back to the interview by the chief deputy, now deputy of this county. And as I said on the sodomy charge, I just – from what I heard he was told, the whole – the statement was just too goofy for me to find a person guilty on that.

Either you have to find – in my mind – that what was said by Mr. Anderson was square and honest across the board or was goofy, and I couldn't find that it was there. So I am finding not guilty on the incest charge.

In this case, the fact-finder's express statements that it found Anderson's extrajudicial statements not to be credible, and that it was not relying on those statements, establish beyond a reasonable doubt that the admission of those statements was harmless, even if it were otherwise erroneous.

Point II is denied.

## Conclusion

The judgment of the circuit court is affirmed.

_____
Alok Ahuja, Judge

All concur.